The judgment of the district court will be reversed and the cause remanded with directions to dismiss the petition for review.

**Harry MOORE, Trustee of the Estate of Billie Sol Estes, Bankrupt, Appellant,**

v.

**FIRST NATIONAL BANK OF ABILENE,**
Appellee.

No. 21313.

United States Court of Appeals
Fifth Circuit.

May 21, 1965.

Allan L. Poage, El Paso, Tex., for appellant.

Stanley P. Wilson, McMahon, Smart, Sprain, Wilson & Camp, Abilene, Tex., for appellee.

Before GEWIN and BELL, Circuit Judges, and McRAE, District Judge.

McRAE, District Judge.

On May 14, 1957, Billie Sol Estes (Estes) executed and delivered his promissory note for $16,000.00 to the First National Bank of Pecos which transferred the note to the First National Bank of Abilene (Abilene). The note was due October 27, 1957, and the security for this note was the execution and delivery of a separate Collateral Agreement.[1] Thereafter, Estes renewed this indebtedness from time to time by the execution of renewal notes, the last of which was given on November 21, 1961, in the amount of $3,000.00.

---

1. The relevant part of this Collateral Agreement reads as follows:

"That any and all securities or other property heretofore, now or hereafter pledged or delivered by any of the undersigned to said bank to secure any indebtedness to said bank, shall be held and construed to be pledged hereunder and as if fully described herein and may be held by said bank as security for any and all debts and obligations of any or all of undersigned to said bank for the payment of money, whether such debts, liabilities and obligations now exist or are hereafter incurred or arise and whether the obligation or liability thereon of the undersigned or any of them be direct, contingent, primary, secondary, joint, several, joint and several, or otherwise, and whether such obligations be of the same character or different."

On March 30, 1961, Abilene obtained from First National Bank of Pecos two promissory notes signed by one Marcus Dingler and dated March 21, 1961. These notes were secured by chattel mortgages on certain irrigation equipment and by the endorsement of Estes, individually.

On April 7, 1962, Estes filed his petition for an arrangement proceeding in bankruptcy in the United States District Court for the Western District of Texas, and on May 3, 1962, that Court entered its Amended General Stay Order, ordering that "all acts and proceedings to enforce any lien upon any property of Billie Sol Estes, or entity in which he has an interest, are enjoined and stayed until further order of this Court." The creditors refused the arrangement proposed by Estes, and he was adjudicated a bankrupt by the United States District Court for the Western District of Texas on July 13, 1962. Appellant Harry Moore (Moore) was appointed Trustee of the Estes Estate.

In August 1962, Abilene foreclosed on the chattel mortgage securing the Dingler notes. After applying the proceeds of this foreclosure sale, there remained a deficit of $15,298.62 owing to Abilene on the Dingler notes. During August and October of 1962, Abilene sold certain of the stocks which had been delivered to it by Estes under the Collateral Agreement for a net amount of $18,750.42. Abilene applied $3,145.50 of this as full payment of principal and interest on the Estes note. Of the $15,604.92 remaining, Abilene applied $1,183.87 as interest due and $14,421.05 as payment of principal on the Dingler notes.

Abilene has not taken part in any of the bankruptcy proceedings, and although the amount realized from the sale of the property held under the Collateral Agreement was not sufficient to satisfy the debt owing to it, Abilene expressly waived any claim against the Estes Estate for the deficiency.

In April 1963, Moore brought this action in the United States District Court for the Northern District of Texas, praying for the return of the funds derived from the sale of the stocks which Abilene had applied to the Dingler notes. After hearing, the District Judge entered an order denying Moore's Motion for Summary Judgment, and granting Abilene's Motion for Summary Judgment. Moore brings this appeal from the Summary Judgment entered for Abilene.

■ Two questions are presented on this appeal. First, the substantive question of whether the broad language of the Collateral Agreement was properly interpreted to include the debts of Estes as surety on the Dingler notes. It is difficult to conceive how more inclusive language could have been used, and in view of the pattern of dealings between the parties we are of the opinion that the determination of the District Judge was clearly correct.

■■ The second question is procedural: Whether, by virtue of Section 57, sub. h of the Bankruptcy Act,[2] Abilene was required to submit to the direct supervision and control of the trustee in bankruptcy in disposing of the secured property in its possession. We do not believe, as the trustee Moore contends, that the purpose of Section 57h is to give the trustee complete control over all of the assets of the bankrupt. The correct rule governing this case is stated in Collier on Bankruptcy,[3] as follows:

"[A] creditor may exercise his option * * * [to] keep his securi-

2. "The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court."

3. Vol. 3, p. 301, Para. 57.20(3) (14th Ed. 1964).

ty and not file any claim. In that case * * *, there is no room for the application of § 57h. Valuation under § 57h is only necessary where a secured claim is filed for the purpose of obtaining a distributive share of the estate."

Although the Bankruptcy Court is charged with the responsibility for protecting all creditors, the freedom of the secured creditor must also be protected. The secured creditor must be left free to protect his interest in the security in his possession without concern for the fate of the debtor. If he wishes to rely solely on his security, he is controlled only by the terms of the governing contract and principles of fair play. We have expressed agreement with the holding of the District Court that the appellee acted within the terms of its contract, and there are no allegations of fraud, collusion or chicanery.

The Judgment of the District Court is therefore

Affirmed.