Harry William GOLDRING et al., Appellants,

v.

Phidias Arden GOLDRING et al., Appellees.

No. 17607.

Court of Civil Appeals of Texas, Fort Worth.

May 2, 1975.

Rehearing Denied June 6, 1975.

Loe & Warren, Callaway & Marshall, and Clyde M. Marshall, Jr., Fort Worth, for appellants.

Brown, Herman, Scott, Dean & Miles, and Beale Dean and William M. Brown, Fort Worth, for appellee, Phidias Arden Goldring.

DeVore, Bagby, McGahey & Ross, and William L. Bagley, Arlington, for appellee, intervenor, Arlington Bank & Trust.

## OPINION

BREWSTER, Justice.

The plaintiffs, Harry William Goldring, Robert Alford Goldring, Donald Lee Goldring and Carolyn June Goldring Agostini, sued their father, Phidias Arden Goldring, in trespass to try title, seeking to recover title to about 100 acres of land. They also sought to cancel and rescind, on the grounds of fraud, certain conveyances and an agreement affecting the title to such property that the parties had entered into about 13 years before this suit was filed. Plaintiffs also asked for an accounting by the father to the plaintiffs for funds plaintiffs claimed the father owed to them as testamentary trustee under the terms of Emma Goldring's will. Emma Goldring was the mother of Phidias Goldring and the grandmother of the plaintiffs. Involved in the proceedings was the matter of construing the will of Emma Goldring. Plaintiffs also sought to recover title to the land free of the lien in favor of intervenor, Arlington Bank and Trust, that had been granted to such intervenor by defendant.

Trial was had before a jury. On a hearing of a preliminary motion filed in the case by plaintiffs, the court entered an order several months before the trial construing the Emma Goldring will adversely to the contentions of plaintiffs. At the subsequent trial, at the close of the plaintiffs' evidence, on motion by the father, the cause of action in trespass to try title and the cause of action for cancellation and rescission of the partition deeds and related agreements were severed from plaintiffs' cause of action relating to an accounting. Judgment was then rendered as a matter of law, denying the plaintiffs the right to cancel and rescind the two partition deeds and accompanying agreement that the parties entered into, and judgment was also rendered that plaintiffs take nothing from defendants on their trespass to try title action. This is an appeal from that decree. The accounting feature of the case, after the severance, was docketed under a different number and after the causes were severed and judgment rendered as above indicated, the trial of the accounting feature of the case continued to the jury as a separate case. The accounting feature of the case is not involved on this appeal.

The appellants did not file a motion for new trial in this case as a prerequisite to the appeal as is required by Rule 324, Texas Rules of Civil Procedure.

Because of that there is at the outset presented to us for determination this question: Which of appellants' 21 points of error must we overrule because appellants did not assign as error in a motion for new trial the matters complained of in the points of error?

The substance of the part of Rule 324 that is material here is that a motion for new trial shall be filed as a prerequisite to appeal except that an assignment in a motion for new trial is not a necessary prerequisite to the right to complain on appeal of a court's action in withdrawing a case from a jury and rendering judgment. But a motion for a new trial is a necessary prerequisite to a consideration of the complaints mentioned in Rule 325, T.R.C.P.

Rule 325 provides that, "In cases of motions for continuance, or for change of venue, or other preliminary motions made and filed in the progress of the cause, the rulings of the court thereon shall be considered as acquiesced in, unless complained of in the motion for new trial; . . . ."

■ In appellants' 4th, 5th, 6th, 7th and 8th points of error, complaint is made of the trial court's rulings on special exceptions and on motions to strike allegations from pleadings that were involved. We overrule each of those points because the

matters therein complained of were not assigned as error in a motion for new trial. See on this Miller v. Riata Cadillac Company, 517 S.W.2d 773 (Tex.Sup., 1974), and First National Life Insurance Co. v. Herring, 318 S.W.2d 119 (Waco, Tex.Civ. App., 1958, no writ hist.).

In appellants' 11th and 12th points of error complaint is made of the trial court's ruling severing the causes in the manner hereinabove indicated. We overrule those two points of error because the court's ruling therein complained of was not assigned as error in a motion for new trial. See Finder v. E. L. Cheeney Company, 368 S.W.2d 62 (Beaumont, Tex.Civ. App., 1963, no writ hist.).

In appellants' 13th point of error complaint is made of the trial court's action in overruling plaintiffs' motion for withdrawal, reconsideration or amendment of the judgment that is being appealed from here.

In their 14th point of error appellants contend that the trial court erred, after he had granted Phidias Goldring's motion for an instructed verdict, in overruling appellants' motion then made to be permitted to reopen their case and to file their second trial amendment.

We overrule appellants' 13th and 14th points of error because the rulings therein complained of were not assigned as error in a motion for new trial. See Rule 324, T.R.C.P., and White v. Aetna Fire Underwriters Insurance Co., 503 S.W.2d 653 (Eastland, Tex.Civ.App., 1973, no writ hist.).

In appellants' 15th and 16th points of error they complain of the trial court's action in overruling their objections to special issues submitted in the charge and in refusing to give their requested instructions in the charge.

We overrule those two points because the matters therein complained of

were not assigned as error in a motion for new trial. Moreno v. Jenkins, 436 S.W.2d 620 (Austin, Tex.Civ.App., 1968, ref., n. r. e.), and Prewitt v. Liberty Mutual Insurance Company, 461 S.W.2d 522 (Waco, Tex.Civ.App., 1970, ref., n. r. e.). We overrule these two points for the additional reason that the issues submitted in the charge to which the objections were made related only to the accounting suit which was severed out of the case that is now on appeal before this Court. Because the accounting suit is not involved on this appeal, the question of whether the court erred in overruling the objections to the charge given in the accounting feature of the case is immaterial to this appeal.

Appellants in their 17th, 18th and 20th points of error complain of rulings of the trial court in either admitting or excluding evidence.

We overrule all three of those points of error because none of the rulings therein complained of were assigned as error in a motion for new trial. Complaints of the action of a court in ruling on the admission or exclusion of evidence are waived when not based on a specific assignment of error in a motion for new trial. Prewitt v. Liberty Mutual Insurance Company, supra.

In their 19th and 21st points of error appellants complain that the trial court erred in unfairly limiting the cross-examination of the witnesses, James Knapp and T. T. Chamberlain.

We overrule both of those points because neither of them were based on an assignment of error in a motion for new trial. Rule 324. We also overrule both of those points for the added reason that the two witnesses referred to in these two points did not even testify until after the judgment here being appealed from had already been rendered. At that time the accounting case had been severed, as above indicated, and the trial before the jury was continuing therein. It was later, during

the trial of only the accounting case that the witnesses Knapp and Chamberlain testified. For that reason any error that the trial court might or might not have committed during the time those witnesses were testifying would have no bearing on the outcome of this appeal.

This suit was filed on December 24, 1969. The plaintiffs sought therein to cancel and rescind the following:

1. A partition deed dated August 1, 1956, by which the defendant, Phidias Goldring, conveyed to his four children (the plaintiffs) that part of the Emma Goldring farm lying north of the Dallas-Fort Worth Toll Road, and by which the plaintiffs conveyed to the defendant all of that farm lying south of said Toll Road;

2. A contract or letter agreement between plaintiffs and defendants dated August 1, 1956, pertaining to this same farm; and

3. Certain recitals contained in a general warranty deed dated January 24, 1958, by which the defendant, Phidias Goldring, conveyed jointly to the four plaintiffs and their mother, Mrs. Gladys Paine, a 9.6 acre tract (being a part of said farm) located on the south side of the Toll Road and fronting on Meadowbrook Drive.

Plaintiffs sought to set aside those instruments on the ground that they were induced to execute the first two instruments just referred to above and to accept the third one (a conveyance) by the alleged fraud of their father consisting of misrepresentations, false promises, and concealments of material facts.

The defendant-intervenor, Arlington Bank and Trust, claimed that it was an innocent mortgagee for value and without notice of any claims to said land by plaintiffs, and that it had loaned money in good faith to Phidias Goldring, the record title holder of said land, who had given a lien on the land as security for the loan.

The undisputed evidence showed that Emma Goldring, the plaintiffs' paternal grandmother, had owned this farm at the time she died. Emma Goldring was also the mother of the defendant, Phidias Goldring. Emma Goldring died on May 26, 1945, leaving a will dated July 15, 1940, which was probated in 1948 by defendant, Phidias Goldring. Phidias Goldring qualified as independent executor under the will. In 1948, when this will was probated, the four plaintiffs' ages were: Harry, 15; Robert, 14; Donald, 12; and Carolyn June, 7. In 1955 and 1956, the Fort Worth-Dallas Toll Road was built across a part of this farm and about 7 acres of the farm was taken for right-of-way for the Toll Road. This left about 30 acres of the farm north of the Toll Road and 110 acres south of it.

It is also undisputed that on about August 1, 1956, Phidias Goldring and the four plaintiffs executed a partition deed which conveyed the 30 acres of the Emma Goldring farm that lies north of the Toll Road to the four plaintiffs and conveyed the 100 acres of that farm that lay south of the Toll Road to defendant, Phidias Goldring. This partition deed, in addition to the part effecting the conveyances above referred to, contained the following recitals:

"Whereas, Emma Goldring, during her life time was the owner of a tract of land . . . which property has commonly been described as the Goldring Estate property in Tarrant County, Texas, and

"Whereas, the said Emma Goldring is deceased and left a written will which has been duly probated in the Probate Court of Tarrant County, Texas, the record of which is . . . made a part hereof for all purposes . . . and

"Whereas, the said will is ambiguous in its terms with reference to the ownership of said property in that she attempted to set up a trust of said property, and

"Whereas (the children naming them) together with their father (naming him) desire to divide the property among them at this time so that the four grandchildren may take title to certain property and that

the father . . . may take deed or title to certain property and that the title to same shall not be under any attempted trust or will, and all being of age do make the following deeds: . . . . "

At the same time this partition deed was executed the parties to the suit all signed a letter agreement in which Phidias Goldring also agreed to later convey a two acre home building site out of this 100 acre tract to each of the four plaintiffs, and another two acre site to the plaintiffs' mother, Mrs. Gladys Paine. This letter agreement signed by all of the Goldrings, also recited the following: "In consideration of this building site, it is agreed that you ratify and confirm all of my previous actions as Independent Executor of the Estate of Emma Goldring, deceased and/or my action as Trustee under the will for you four children and each of you waive any maintenance or education which might have been set up under the terms of your grandmother's will."

As of August 1, 1956, the date of the partition deed referred to, Harry was 24 years old and Robert was 22 years of age. Donald Lee Goldring was 20 years old but his disabilities of minority had prior thereto been removed by court action. Carolyn June Goldring, who was 16 years old, had been emancipated by a prior marriage to Lon T. Stephens.

The third instrument referred to above, recitals in which are sought to be set aside by plaintiffs, is the warranty deed executed January 24, 1958, by Phidias Goldring, by which he conveyed approximately 9.6 acres of the farm involved that lies south of the Toll Road to the four plaintiffs and their mother, Mrs. Gladys Paine. This deed was executed and delivered to plaintiffs in order to carry out the terms of the letter agreement of the parties dated August 1, 1956, and to carry into effect the partition agreement that the parties had previously made.

This deed of January 24, 1958, contained the following recitals as to what consti-

tuted the consideration for the execution of that deed: "TEN AND NO/100 DOLLARS, cash in hand paid, the receipt of which is hereby acknowledged and confessed; AND

"The further consideration of the love and affection I have for my children; AND

"In further consideration of the carrying out of a Partition Agreement dated August 1st, 1956, and the Grantees by the acceptance and filing of this Deed acknowledge receipt of the five two acre tracts as called for in said contract. We ratify and affirm said partition deed heretofore given the Grantor herein and which is recorded in Volume 3018 at Page 445 of the Deed Records of Tarrant County, Texas."

On or about the same date that Phidias Goldring executed the deed conveying this 9.6 acre tract to the four plaintiffs and to their mother, Mrs. Paine, those grantees joined in executing a conveyance by which those five grantees partitioned the 9.6 acre tract among themselves, giving to each of the five persons a tract of about two acres.

Thereafter on March 3, 1958, the plaintiffs, Harry William Goldring and Donald Lee Goldring, joined with their mother, Mrs. Paine, and her husband, and conveyed by warranty deed to W. D. and Gartrelle S. Thornton the three 2 acre tracts that had been conveyed to them by the partition deed referred to in the paragraph next above.

The plaintiff Carolyn June Goldring Stephens and her then husband on March 14, 1958, conveyed her 2 acre tract that she had from the January 24, 1958 partition deed executed by plaintiffs to the plaintiff, Donald Lee Goldring for $2,300.00 and Donald Lee Goldring did on April 10, 1959, sell and convey this 2 acre tract to W. D. and Gartrelle S. Thornton.

The evidence also showed that on September 7, 1957, Phidias Goldring did execute a will leaving all of the Emma Gold-

ring farm that he still had at his death to the four plaintiffs.

On the 6th day of July, 1971, after this suit was instituted, all four of the plaintiffs joined in executing a quitclaim deed to Mr. and Mrs. Thornton conveying to them the four 2-acre tracts that the Thorntons had previously purchased from the plaintiffs as above set out. This deed shows that the plaintiff, Harry Goldring, acknowledged that deed before a notary as late as February 3, 1974.

The construction of the third paragraph of the Emma Goldring will is involved in this case and it is worded as follows: *"Third*: I give and bequeath to my said son Phibis Arden Goldring, my farm and all improvements thereon which is situated in Tarrant County (then follows a description of the farm) to have and to hold the same during his life in trust for his four children (my grandchildren,) namely Harry William Goldring a boy, Robert Alford Goldring a boy, Donnie Lee Goldring a boy and Carolyn June Goldring a girl; and to descend to them in equal parts after the death of my said son. –This clause is intended to create a life interest only to said land and tenements in my said son and I desire that he take full charge of said land and estate and to use and cultivate and maintain the same in good condition and to equitably divide the rentals and income from the management of said property into a fund to be used for the maintenance and education of said minor children named above and who are the beneficiaries herein."

The question of who got what by this bequest contained in the third paragraph of the Emma Goldring will could have a material bearing on the outcome of the Trespass to Try Title case involved here and also on the outcome of the accounting suit plaintiffs had filed against defendant, Phidias Goldring.

The plaintiffs filed herein a motion in limine, asking the court to construe the will in advance of the trial on the merits.

The trial on the merits began June 24, 1974. On April 16, 1974, pursuant to plaintiffs' motion to have paragraph 3 of the will construed in advance, the trial court did enter an order construing that paragraph of the will as follows: "By Paragraph Third of her said will the testatrix, Emma Goldring, devised and bequeathed to her son, Phidias Arden Goldring, a life estate in and to the farm property in question, with the remainder interest, at his death, to descend in equal parts to her four grandchildren, Harry William Goldring, Robert Alford Goldring, Donnie Lee Goldring, and Carolyn June Goldring, subject only to the precatory desire expressed by testatrix that her son, Phidias Arden Goldring, use the rentals and income from his management of the property for the maintenance and education of her four grandchildren named above, during their minority."

The plaintiffs, by their first three points of error, contend that the trial court erred in construing the third paragraph of the Emma Goldring will in the manner that that court did construe it in his order of April 16, 1974, referred to above.

The defendants contend that since the order construing the third paragraph of the will was rendered and entered in limine in response to plaintiffs' motion asking for such a pre-trial construction thereof that because of the provisions of Rule 325, T.R.C.P., plaintiffs are deemed to have acquiesced in such preliminary ruling and have lost the right to complain thereof on appeal because they did not file a motion for new trial in which they assigned as error the trial court's ruling in construing the will.

We overrule the defendants' contention that we have just referred to. We hold that plaintiffs did not, because of the provisions of Rule 325, T.R.C.P., lose the right by failing to file a motion for new trial to complain of the trial court's ruling wherein he construed the third paragraph of the will as has been indicated above.

Our authority for this holding is the case of City of Roma v. Starr County, 428 S. W.2d 851 (San Antonio, Tex.Civ.App., 1968, ref., n. r. e.).

The court's order construing the will, although made at a preliminary stage of the case, in part went to decide the merits of the case. If that ruling stands, its effect is to, of itself, result in a ruling on the trespass to try title feature of the case adverse to the plaintiffs.

■ The City of Roma case held that when properly construed, Rule 325, T.R.C. P., relates and has application to only preliminary motions and rulings of the same class as those that are specifically enumerated in the rule, such as motions for continuance and motions for change of venue. That court reached that conclusion by applying the rule of construction known as the doctrine of *ejusdem generis* that is discussed in 53 Tex.Jur.2d 221, Statutes, Sec. 155. That doctrine is to the effect that general words following an enumeration of particular or specific things will be construed to mean only things of the same kind as those specifically named.

When that doctrine is applied in construing Rule 325 to determine whether or not its provisions apply to the court's preliminary ruling construing the Emma Goldring will, we reach the conclusion that Rule 325 does not apply. This is true because the specific types of preliminary rulings referred to in the Rule, such as motions for continuance and for change of venue, are not of the same class or category as a motion to construe the will, which was a matter that has a material bearing in the determination of the merits of the law suit. Motions for continuance and for change of venue do not relate to a determination of the merits of the case.

For the reasons stated we hold that we are required to consider plaintiffs' first three points of error.

We sustain the plaintiffs' first three points of error in so far as they contend

that the trial court erred in construing the third paragraph of the Emma Goldring will as he did in his April 16, 1974, order. We hold that the trial court erred in construing that will as he there did.

■ The rules hereinafter set out are announced in the case of Bergin v. Bergin, 159 Tex. 83, 315 S.W.2d 943 (1958), and are applicable here. In construing a will a court's purpose and duty is to ascertain and declare the intent of the testatrix and to enforce that intent if it is legal. The intention of the testatrix is to be ascertained by viewing the will in its entirety. Although words such as "desire" in their ordinary and primary meaning are precatory, they are often construed as mandatory when used in a will or when it appears from the entire document that they are the expression of the testatrix' intention in disposing of her property.

■ We hold that a correct construction of the third paragraph of Emma Goldring's will is that it bequeaths her farm to her son, Phidias Goldring, to have and to hold the same during the term of his life in trust for her four grandchildren (the plaintiffs). The trustee, Phidias Goldring, was given the duty to manage and control the farm as trustee during the term of his life and to use the income therefrom for the education and maintenance of the plaintiffs for as long as he, the trustee, lived. Upon the death of the trustee, Phidias Goldring, the farm was to descend in equal shares to the four plaintiffs.

The will did not bequeath to Phidias Goldring a life estate in the farm, and, in fact, the only right it did bequeath to him was the right to serve as trustee for his children and to have the control and management of the farm for their benefit during the term of his life.

The trust did not end when the beneficiaries ceased to be minors, as has been suggested, because the will expressly provided that the bequest to Phidias Goldring was in trust for the term of his life.

We are convinced that the testatrix in using the word "desire" in the second sentence of the third paragraph of her will used it in a mandatory sense to express her intent as to the terms of the trust which she had in prior sentence expressly created, the uses to which the trust property and the funds derived from the operation thereof would be put, and of the duties her son would have in serving as trustee of the trust.

In plaintiffs' 9th and 10th points of error they contend that the court erred in granting defendant, Phidias Goldring's motion for an instructed verdict at the close of the plaintiffs' evidence and in rendering judgment for that defendant and against the plaintiffs on their cause of action in Trespass to Try Title and to set aside the 1956 partition deed and agreement that the parties had made.

We overrule both of these points of error.

■■■ It was not necessary that plaintiffs have an assignment of error in a motion for new trial in order to complain on appeal of the trial court's rulings referred to in those points. McKelvy v. Barber, 381 S.W.2d 59 (Tex.Sup., 1964).

■■■ Defendant's motion for instructed verdict was based on several independent grounds. The trial court granted the motion without indicating which of the grounds he granted it on. If any of the grounds urged were sound, then we must overrule these two points of error and affirm the judgment. McKelvy v. Barber, supra.

The defendant, Phidias Goldring, had contended that he had acquired title to the land sued for by virtue of an accord and satisfaction, or partition or settlement agreement, that he and the plaintiffs had entered into in 1956 and 1958 by which they all executed deeds and a letter agreement partitioning the Emma Goldring farm between them.

If this partition transaction was valid, then plaintiffs could not win the trespass to try title feature of the case because the plaintiffs had in the partition deed granted, sold and conveyed to their father, Phidias Goldring, all of the Emma Goldring farm that lay south of the turnpike.

The plaintiffs sought to get around the partition transaction by suing herein to cancel and rescind this partition transaction on the grounds that they were induced to enter into it by the fraud of their father, Phidias Goldring.

This partition deed was executed by all the plaintiffs and by the defendant, Phidias Goldring, on August 1, 1956. It recited in substance that whereas Emma Goldring had owned the farm in question during her lifetime and the following is copied from the partition deed: "Whereas, the said Emma Goldring is deceased and left a written will which has been duly filed and probated in the Probate Court of Tarrant County, Texas, the record of which is herein referred to and made a part hereof for all purposes and as if incorporated herein, and

"Whereas, the said will is ambiguous in its terms with reference to the ownership of said property in that she attempted to set up a trust of said property, and

"Whereas (the children naming them) together with their father (naming him) desire to divide the property among them at this time so that the four grandchildren may take title to certain property and that the father . . . may take deed or title to certain property and that the title to same shall not be under any attempted trust or will, and all being of age do make the following deeds: . . . . "

The plaintiffs and their father then proceeded by that deed to partition the Emma Goldring farm between them by granting, selling and conveying to plaintiffs all that part of the farm that lay north of the turnpike and granting, selling and conveying to defendant, Phidias Goldring, all that

part of the farm that lay south of the turnpike.

At the same time the parties entered into the following letter agreement:

"August 1, 1956

"Harry William Goldring,
"Robert Alford Goldring,
"Donald Lee Goldring
"Carolyn June Goldring Stevens

"Dear Children:

"We have today executed a deed by which you are taking title to all of the property mentioned as being that part of the Emma Goldring Estate which lies north of the Toll Road and you have deeded to me all of that property which lies South of the Toll Road and as a further consideration and as my desire to establish each of you with a homesite, including your mother, Gladys O. Payne, who was my former wife, I agree that as soon as I may secure a surveyor to survey same that I will begin at the northeast corner of the property on the south side of the present road which is known as the Meadowbrook Extension and that I will have a surveyor to cut five (5) two acre tracts and when he has made a map of same that you children will have a drawing or some sort of designation between you and your mother and after it has been determined which tract each of you shall receive, I agree to execute a Warranty Deed to you four children on the two acre tract which you have selected and the fifth tract I shall deed to your mother, Gladys O. Payne, so that each of you five may have a tract to build a home upon.

"In consideration of this building site, it is agreed that you ratify and confirm all of my previous actions as Independent Executor of the Estate of Emma Goldring, deceased and/or my action as Trustee under the will for you four children and each of you waive any maintenance or education which might have been set up under the terms of your grandmother's will.

"Respectfully,
"/s/ Phidias Arden Goldring
Phidias Arden Goldring

"ACCEPTED:
"/s/ Harry William Goldring
Harry William Goldring
"/s/ Robert Alford Goldring
Robert Alford Goldring
"/s/ Donald Lee Goldring
Donald Lee Goldring
"/s/ Carolyn June Goldring Stephens
Carolyn June Goldring Stevens
"Stephens"
"/s/ Lon T. Stephens
Lon T. Stevens
"Stephens"

To further carry out the partition agreement Phidias Goldring did on January 24, 1958, execute another deed by which he conveyed to plaintiffs and to their mother, Mrs. Gladys Paine, a 9.6 acre tract out of the part of the Emma Goldring farm that lay south of the highway.

That deed contained the following recital:

"In further consideration of the carrying out of a Partition Agreement dated August 1st 1956, and the Grantees by their acceptance and filing of this Deed acknowledge receipt of the five two acre tracts as called for in said contract. We ratify and affirm said partition deed heretofore given the Grantor herein and which is recorded in . . . the Deed Records of Tarrant County, . . . ."

We are convinced that these two deeds and the partition and settlement agreement were based on a valid consideration.

On receipt of the January 24, 1958, deed from Phidias Goldring the plaintiffs and their mother on that date executed a partition deed on that same date by which they partitioned the 9.6 acre tract into 5 separate lots and gave each of the parties to the deed one lot.

On March 3, 1958, the plaintiffs, Harry William Goldring and Donald Lee Goldring and their mother, Mrs. Paine, conveyed the three lots they had gotten out of the 9.6 acre tract to W. D. Thornton and his wife.

On March 14, 1958, the plaintiff, June Goldring Stephens, deeded the lot she got out of the 9.6 acres to her brother, Donald Lee Goldring. On April 10, 1959, Donald Lee Goldring deeded that lot to W. D. Thornton and wife.

And on July 6, 1971, all of the plaintiffs joined in executing a quitclaim deed by which they bargained, sold and quitclaimed to W. D. Thornton and his wife the four lots out of the 9.6 acre tract that had previously been conveyed to the Thorntons. The plaintiff, Harry William Goldring, acknowledged this deed as late as February 3, 1974.

The first ground of the motion for instructed verdict was that the undisputed evidence showed that all of the plaintiffs had in 1958, 1959, and 1971 executed deeds conveying a part of the land that they acquired out of the partition agreement with their father to W. D. Thornton and wife, and had thus made it impossible for them to restore the conditions that existed prior to the time the partition agreement was entered into on August 1, 1956. It was contended that because of these facts, as a matter of law, the plaintiffs could not get a rescission on the grounds of fraud of the partition deeds and agreement that are involved. The facts on this issue were undisputed.

The following Texas cases uphold this contention: Corbett v. McGregor, 62 Tex. Civ.App. 354, 131 S.W. 422 (1910, writ ref.) ; Chambers v. Grisham, 157 S.W. 1177 (El Paso, Tex.Civ.App., 1913, writ ref.); and DePuy v. Bodine, 509 S.W.2d 698 (San Antonio, Tex.Civ.App., 1974, ref. n. r. e.).

The second ground of defendants' motion for instructed verdict was that it is undisputed that after acquiring knowledge of all the papers and documents involved here, including the Emma Goldring will, and after becoming aware of all the fraud they claim was committed on plaintiffs, Donald Lee Goldring continued to manage the thirty acre tract north of the toll road that plaintiffs were deeded by their father in the 1956 partition deed and that he managed it as the agent of the other plaintiffs and as such continued to collect the income from this property for the benefit of the plaintiffs and by doing so he recognized as a binding transaction the partition agreement and deeds by which the plaintiffs were deeded such property and have thereby affirmed the transaction and waived the

plaintiffs' right, if any, to rescind the partition transaction.

▇ The undisputed evidence did show that since about 1965 Donald Goldring has taken charge of the 30 acre tract the plaintiffs were deeded in the 1956 partition agreement and rented all or parts of it and applied the rentals in payment of the taxes on the property for the benefit of all plaintiffs. This conduct has continued after the plaintiffs acquired full knowledge of the fraud they complain of.

The third ground of the motion for instructed verdict was that the undisputed evidence showed that after this suit was filed and after the plaintiffs had full knowledge of all of the matters about which they complain, they executed the quitclaim deed to W. D. Thornton and wife with respect to four of the approximately 2 acre lots that they received out of the 9.6 acre tract south of the turnpike that was deeded to them by their father, and that by reason of said quitclaim plaintiffs, as a matter of law, ratified, confirmed and acknowledged the title conveyed by them to the Thorntons by the March 3, 1958, and April 10, 1959, deeds, and that by such action, as a matter of law, the plaintiffs waived any right they might have had to cancel or rescind the complained of partition transaction with their father which constitutes a link in the chain of title to these tracts that were conveyed to the Thorntons.

▇ The undisputed evidence does show that all of the plaintiffs, after this suit was filed, executed and delivered the quitclaim deed to the Thorntons after they had acquired full knowledge of all facts they now complain of. By this conduct they recognized as valid and binding the 1956 partition deed and agreement by which they acquired the fee simple title to that property.

The law relied upon by defendant in support of his second and third grounds of his motion for instructed verdict is pronounced in Rosenbaum v. Texas Bldg. & Mortg. Co., 140 Tex. 325, 167 S.W.2d 506 (Tex.Com.App., 1943) as follows: "The principle of law applicable to the foregoing facts is well established. It is, in effect, that, if a person who is induced by fraud to enter into a contract continues to receive benefits under the contract after he becomes aware of the fraud, or if he otherwise conducts himself in such manner as to recognize the contract as subsisting and binding, he thereby affirms the contract and waives his right of rescission. An express ratification is not necessary; any act based upon a recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it has the effect of waiving the right of rescission."

In that case Mrs. Rosenbaum contended that she was induced by fraud to purchase some bonds. After she discovered the fraud and after the suit was filed, defendant then sent her a $150.00 check which was a semi-annual payment of interest on the bonds that she had purchased. Mrs. Rosenbaum cashed the check and used the proceeds. The Court held that this was a positive act of ratification of the contract and because of that act she waived her right to have that contract rescinded.

The following cases also support defendant's contentions on this point: Oram v. General American Oil Company of Texas, 513 S.W.2d 533 (Tex.Sup., 1974); Powell v. Rockow, 127 Tex. 209, 92 S.W.2d 437 (Tex.Com.App., 1936); Webb Materials, Inc. v. Lacey, 364 S.W.2d 473 (San Antonio, Tex.Civ.App., 1963, ref., n. r. e.); and DePuy v. Bodine, supra.

▇ One's mental intent or reservation does not enter into a determination of this question. On that the Supreme Court in Oram v. General American Oil Company of Texas, supra, said the following: "It is true that Mrs. Oram has written to the lessee objecting to the lease, and in her petition she states that she did not intend to

ratify the lease by her acceptance of the rental payments. Whatever her mental reservations have been, her acceptance of the payments are inconsistent with the intention to avoid the lease. These acts have recognized the lease as subsisting and binding. The effect is to waive or abandon any right of rescission . . . ."

The fourth ground of defendant's motion for instructed verdict was that the suit brought by plaintiffs in 1969 to cancel and set aside the 1956 partition deed and settlement agreement was barred by the four year statute of limitations as a matter of law because under the undisputed evidence the plaintiffs could have discovered, through the use of reasonable diligence through the means and avenues open to them, the fraud alleged to have been practiced by defendant prior to four years next preceding institution of the suit.

We will not further discuss this ground of that motion and other grounds urged in the motion for instructed verdict because of the length this opinion has already reached.

We hold that the grounds of the motion for instructed verdict that we have hereinabove referred to were each a sound and sufficient basis for the trial court's action in withdrawing this case from the jury and in rendering judgment for defendant.

It is for the reasons stated that we have overruled plaintiffs' ninth and tenth points of error.

The trial court's error in construing the Emma Goldring will was not a reversible error because regardless of what a proper construction of such will was the parties to this suit settled the problem of who got what under the terms of that will by the 1956 partition deed and agreement that they entered into. It is that 1956 partition deed and agreement that put title to the part of the farm lying south of the turnpike in Phidias Goldring.

Judgment is affirmed.