Clarence C. BURNETT, Individually and as Representative of the C & G Trust and Estate of Gladys C. Burnett, Deceased, Appellant,

v.

The FIRST NATIONAL BANK OF WACO, TEXAS, Appellee.

No. 4867.

Court of Civil Appeals of Texas, Eastland.

April 15, 1976.

Rehearing Denied May 13, 1976.

Jack N. Price, Price & Williams, Austin, for appellant.

Minor L. Helm, Jr., Waco, for appellee.

RALEIGH BROWN, Justice.

The First National Bank of Waco, Texas, sued Clarence C. Burnett, individually, and as representative of the C & G Trust and Estate of Gladys C. Burnett, deceased. The suit was predicated on Burnett's guarantees to the bank on debts incurred by C & G Trust of which the bank served as trustee. Burnett filed a counterclaim against the bank alleging the bank had failed to properly discharge its duties as trustee of the C & G Trust. Robert and Clarence E. Burnett, sons of Clarence C. and Gladys Burnett, intervened individually and on behalf of their children who were the ultimate beneficiaries of the C & G Trust asserting a like cause of action as alleged by Clarence Burnett in his counterclaim. The trial court directed a verdict in favor of the bank and entered judgment for $452,884.75 plus attorney's fees of $45,288.84 together with interest on the attorney's fees at the rate of 6% per annum from August 26, 1974, and with interest on $28,464.43 at the rate of 7% per annum from August 26, 1974, and interest on $424,420.32 at the rate of 8% per annum from August 26, 1974. The judgment further authorized foreclosure of the bank's security interest in 11,017 shares of common stock in Franklin Life Insurance Company. Clarence C. Burnett, the intervenors and cross-plaintiffs were denied any relief. Clarence C. Burnett individually and as representative of the C & G Trust and the Estate of Gladys C. Burnett, deceased, appeals. No appeal bond was filed on behalf of any other party. We affirm.

The appellant presents sixteen points of error. Six of the points were not properly perfected. The remaining points urge two matters: (1) a challenge to the court's action with reference to the bank's claim against Burnett on his guarantees and his defenses thereto and (2) Burnett's claim against the bank as trustee for its failure to properly perform its duties as trustee of the C & G Trust.

The C & G Trust, established October 20, 1964, was a revocable trust at all times in question. It was created by legally competent adult grantors, Clarence C. and Gladys C. Burnett, dealing with community property with themselves as lifetime beneficiaries. Gladys Burnett died in 1971 and her interest vested in an irrevocable trust with her grandchildren as beneficiaries. The First National Bank of Waco was trustee. The Trust borrowed money from the bank and loaned and advanced money to entities owned and controlled by Clarence Burnett or persons associated with him. Loans were made by C & G Trust to Fidelity Finance Company, to an oil venture operated by the JPG Oil Company, to the M & B Development Company, to Wayne McKethan, and to Rudy Spell.

Fidelity Finance Company was a corporation in which Clarence Burnett was Secretary-Treasurer and owned one-third of its stock. Ed Burnett, a son of Clarence C. Burnett, was a director and owner of one-third of the stock. Rudy Spell, the President of the corporation, owned the remaining stock.

M & B Development Company is a land development corporation of which Clarence Burnett was President. Clarence C. and his son, Ed, are stockholders and Wayne McKethan was a business associate in the company.

Clarence C. Burnett had an interest in the oil venture operated by JPG Oil Company. He was a successful businessman having been in the insurance business for many years, being a C.L.U. Burnett had dealt in oil and gas, real estate, finance companies, and had served as a director of a bank for over twenty years. By instrument dated April 27, 1967, Burnett guaranteed "the payment of indebtedness now existing or hereafter incurred by C & G Trust to The First National Bank of Waco, Texas, . . This guaranty shall be without limitation as to amount, and shall be effective until written notice is delivered to the Trustee, to the effect that the undersigned, C. C. Burnett is no longer connected with the business en-

terprises being financed by said trust, . . . ." No such notice was furnished the trustee.

The powers granted the trustee by the trust instrument were broad and specifically granted the trustee the power to deal with the First National Bank of Waco, to borrow money from said bank and to give such security as it may deem appropriate with respect to the loans.

Burnett contends the bank, as trustee, is liable to him, as beneficiary, for making loans to Fidelity Finance Company and to the JPG oil venture. He argues the bank failed to perform its discretionary functions as trustee because it did not exercise its own judgment before making the loans. We disagree.

The following is found in 128 A.L.R. 6 (1940):

"It is a well-established rule in the law of trusts, that a beneficiary may, by his consent, acquiescence, or ratification, be estopped to complain of a breach of trust by the trustee. In other words it would seem that the principles of estoppel apply to cestuis que trust just as fully as to persons in other relationships . . . ."

See also *Murphy-Bolanz Land & Loan Co. v. McKibben*, 236 S.W. 78 (Tex.Com.App.1922, jdgmt. adopted).

The rule has support in the Restatement of the Law of Trusts § 216 and § 218 (2nd ed., 1959):

"§ 216. Consent of Beneficiary

(1) Except as stated in Subsections (2) and (3), a beneficiary cannot hold the trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary prior to or at the time of the act or omission consented to it.

(2) The consent of the beneficiary does not preclude him from holding the trustee liable for a breach of trust, if

(a) the beneficiary was under an incapacity at the time of such consent or of such act or omission; or

(b) the beneficiary, when he gave his consent, did not know of his rights and of the material facts which the trustee knew

or should have known and which the trustee did not reasonably believe that the beneficiary knew; or

(c) the consent of the beneficiary was induced by improper conduct of the trustee.

(3) Where the trustee has an adverse interest in the transaction, the consent of the beneficiary does not preclude him from holding the trustee liable for a breach of trust not only under the circumstances stated in Subsection (2), but also if the transaction to which the beneficiary consented involved a bargain which was not fair and reasonable."

"§ 218. Discharge of Liability by Subsequent Affirmance

(1) Except as stated in Subsection (2), if the trustee in breach of trust enters into a transaction which the beneficiary can at his option reject or affirm, and the beneficiary affirms the transaction, he cannot thereafter reject it and hold the trustee liable for any loss occurring after the trustee entered into the transaction.

(2) The affirmance of a transaction by the beneficiary does not preclude him from holding the trustee liable for a breach of trust, if at the time of the affirmance

(a) the beneficiary was under an incapacity; or

(b) the beneficiary did not know of his rights and of the material facts which the trustee knew or should have known and which the trustee did not reasonably believe that the beneficiary knew; or

(c) the affirmance was induced by improper conduct of the trustee; or

(d) the transaction involved a bargain with the trustee which was not fair and reasonable."

Art. 7425b–23, V.A.C.S. (1960) provides similarly:

"Power of beneficiary

Any beneficiary of a trust affected by this Act may, if of full legal capacity and acting upon full information, by written instrument delivered to the trustee, relieve the trustee as to such beneficiary from any or all of the duties, restrictions, responsibilities and liabilities which would otherwise be imposed on the trustee by this Act, including the release of the trustee from any or all liability to such beneficiary for past violations of any of the provisions of the Act, except as to the duties, restrictions, and liabilities imposed on corporate trustees by Sections 10, 11, and 12 herein. Acts 1943, 48th Leg. p. 232, ch. 148 § 23."

The court in *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377 (1945) said:

". . . the established rule is that while a beneficiary's consent to an act of his trustee which would constitute a violation of the duty of loyalty precludes him from holding the trustee liable for the consequences of the act, the beneficiary is not precluded from holding the trustee unless it is made to appear that when he gave his consent the beneficiary had full knowledge of all the material facts which the trustee knew. *In re Trusteeship of Stone*, 138 Ohio St. 293, 34 N.E.2d 755, 134 A.L.R. 1306; Scott's The Law of Trusts, Vol. 2, pp. 1149–1153, Sec. 216; Restatement of the Law of Trusts, Vol. 1, pp. 609–619, Sec. 216."

The evidence conclusively establishes Clarence C. Burnett was at no time during the period in question under a disability. He was an adult beneficiary of a revocable trust. Letters and instruments [1] delivered

---

1. Letter dated July 13, 1966. Plaintiff's exhibit 7:

"The First National Bank of Waco
P.O. Box 950
Waco, Texas
Gentlemen:
Re: C & G Trust U/A

By agreement dated October 20, 1964, your bank accepted the duties of Trustee of a revocable trust executed by C. C. and Gladys Burnett for the benefit of grantors.
*The purpose of this trust is to create a reasonable to high current rate of income for the beneficiaries, and the assets will mainly consist of stocks, real estate and loans obtained or negoti-*

to the bank by Burnett established his consent, acquiescence, ratification, and/or related for by C. C. Burnett. Such loans from the trust will usually be to individuals associated with Mr. Burnett or to corporations in which he has a substantial interest.

Accordingly, this letter authorizes you, as Trustee of the C and G Trust U/A to make loans to the Fidelity Finance Company, the M and B Development Company and individuals associated with each of these companies. No maximum limit is to be placed on such loans so long as C. C. Burnett is associated with the companies, and C. C. Burnett hereby agrees to hold the bank, individually and as trustee, harmless from any and all liability which might arise because of the aforementioned loans or other similar loans hereinafter made. This indemnity shall be binding on the heirs, legal representatives and assigns of C. C. Burnett.

/s/ C. C. Burnett
C. C. Burnett"

Plaintiff's exhibit 8:
"The First National Bank of Waco, Texas, Trustee
Gentlemen:
Loan by you, as Trustee of the 'C & G' Trust, to JPG Oil Company is satisfactory to me, and I absolve the trust and the Trustee of any liability or loss by virtue of the making of said loan and the collection thereof.

/s/ Clarence C. Burnett
Clarence C. Burnett"

Letter dated April 4, 1967. Plaintiff's exhibit 9:
"Mr. C. C. Burnett
1216 Austin
Waco, Texas
Dear Mr. Burnett:
This letter shall constitute an understanding and agreement between the undersigned, C. C. Burnett, and The First National Bank of Waco, Texas, Trustee, with reference to the past, present and future administration of C & G Trust, and shall restate, reaffirm and clarify the liability of the undersigned, C. C. Burnett, under the guaranty executed by him under date of July 13, 1966, and under the terms and provisions of this agreement.

1.
The Trust Indenture executed by Clarence C. Burnett and wife, Gladys C. Burnett, as 'Grantors' and The First National Bank of Waco, Texas, Trustee, by which the C & G Trust was created, which said Trust Indenture is dated October 20, 1964, and all of the right, power and authority, together with all duties, liabilities and responsibilities therein granted and imposed, are hereby expressly ratified and confirmed, and shall be interpreted in accordance with the memorandum executed by the undersigned, C. C. Burnett, and directed to The First National Bank of Waco, Texas under date of February 2, 1965.

lease of the acts of the trustee in making the loans to Fidelity Finance and to the

2.
The assets constituting the corpus or principal of the C & G Trust, as of the date of this agreement, consist of the following:
1312 shares Franklin Life Insurance Company common stock
833 shares Transamerica Corporation common stock
Advancements made to Fidelity Finance Company—$203,181.00
JPG Oil Company note dated August 13, 1966, in original amount of $30,000, bearing interest at 7% per annum, payable on or before four years from date, interest payable semi-annually, principal balance $27,500.
J P G Oil Company note dated November 11, 1966, in original principal amount of $25,000, payable in monthly installments of $425 each, plus interest, at 7% per annum, payable semi-annually, balance due $25,000.
J P G Oil Company note dated September 20, 1966, in original principal amount of $25,000, payable on or before four years after date, interest at 7% per annum, payable monthly, principal balance due $23,888.
Wayne W. McKethan note dated February 4, 1966, in original principal amount of $10,000, payable on or before three years after date and bearing 8% interest; renewed and increased to the amount of $12,500 by new note dated April 4, 1966; principal balance due $12,500.
M & B Development Company note dated December 30, 1966, in the amount of $1,000, bearing interest at 8% per annum and payable December 30, 1967, principal balance due $1,000.
Carl R. Spell note dated June 28, 1965 in the amount of $10,771.22, due on demand and bearing interest payable annually at 8% per annum, principal balance due $10,771.22.
Wallace and Naomi McKethan note dated May 5, 1965, in the principal amount of $12,500, payable on or before three years after date and bearing interest at 8½% per annum, payable semi-annually, principal balance due $12,500.
The Franklin Life Insurance Company stock and Transamerica Corporation stock listed above as assets of the C & G Trust constitute contributions from the Grantors of said trust. All notes listed above as assets of C & G Trust were made with the express knowledge, consent and approval of the undersigned, C. C. Burnett, and at his express or implied direction. The security for the payment of said notes has been expressly approved by the undersigned, C. C. Burnett, and the retention of said notes as assets of said trust is hereby expressly ratified, confirmed and approved.
It is understood and agreed that the notes of Fidelity Finance Company are recorded as long term notes of said company, but in truth and in fact, at the request, understanding and direction of the undersigned, C. C. Burnett, these

JPG oil venture. The points of error are overruled.

Appellant further contends the trial court erred in rendering judgment in favor of the

obligations constitute cash advances made to Fidelity Finance, and are not represented by notes, for business reasons. The Trustee is authorized to continue to make such cash advances, at the request of Carl R. Spell, and may either designate such advances as 'long term notes' or as cash advances, or in any other manner which will properly identify such advancements.

3.

The liabilities of C & G Trust, as of the date of this agreement, are as follows:

Note to The First National Bank of Waco, Texas in the amount of $50,000, bearing interest at 6½% per annum, payable March 31, 1967, and note to The First National Bank of Waco, Texas in the principal amount of $30,000, bearing interest at 6½% per annum, due and payable May 17, 1967, the two notes aggregating $80,000 principal amount, and representing money borrowed to make loans to JPG Oil Company.

Note to The First National Bank of Waco, Texas in the amount of $10,771.22, bearing interest at 6½% per annum, due and payable June 28, 1967, and representing money borrowed for the purpose of making loan to Carl R. Spell.

Note to The First National Bank of Waco, Texas in the principal amount of $12,500, bearing interest at 6½% per annum, due and payable May 5, 1967, and representing money borrowed for the purpose of making a loan to Wallace McKethan.

Note to The First National Bank of Waco, Texas, in the amount of $12,500, bearing interest at 6½% per annum, and due and payable May 7, 1967, representing money borrowed for the purpose of making loan to Wayne McKethan.

Various notes to The First National Bank of Waco, Texas, aggregating principal amount of $171,335.02, bearing interest at 6½% per annum, and due and payable at various dates within six months from the date hereof, representing money borrowed for the purpose of making advancements to Fidelity Finance Company.

All of the notes listed above have been made with the express or implied knowledge and consent of the undersigned, C. C. Burnett, and the actions of the Trustee in creating said obligations of the trust are hereby authorized, ratified and confirmed. Such borrowings have been for legitimate business purposes of the trust and are authorized by the Trust Indenture creating the trust, and the memorandum executed by C. C. Burnett dated February 2, 1965.

4.

The Trustee of C & G Trust is hereby authorized to continue making loans and cash advances for the purpose for which the loans listed in the assets of the C & G Trust were made, and to continue to borrow money from The First National Bank of Waco, Texas for the purpose for which the liabilities of C & G Trust, above enumerated, were created.

The undersigned, C. C. Burnett, hereby agrees to indemnify and hold the Trustee harmless from any liability or responsibility accruing to it by reason of making these specific loans enumerated herein as assets of C & G Trust, or borrowing money from the First National Bank of Waco, Texas, for the uses and purposes, or similar uses and purposes, for which the specific loans listed as liabilities of C & G Trust were made.

Furthermore, the undersigned, C. C. Burnett, for himself, his heirs, executors, administrators and personal representatives, hereby guarantees the payment of indebtedness now existing or hereafter incurred by C & G Trust to The First National Bank of Waco, Texas, whether such indebtedness is or shall be represented by note, guaranty, surety, or otherwise. This guaranty shall be without limitation as to amount, and shall be effective until written notice is delivered to the Trustee, to the effect that the undersigned, C. C. Burnett, is no longer connected with the business enterprises being financed by said trust, but such notice shall not affect the liability of the guaranty accruing prior to the delivery of said notice.

If this letter sets forth the understanding and agreement between the parties, please execute a copy of the letter provided for your signature, and this letter will constitute a contract and agreement between the parties, and an addendum to the original Trust Indenture and the memorandum dated February 2, 1965.

Yours very truly,
THE FIRST NATIONAL BANK
OF WACO, TEXAS, Trustee,
C & G Trust
By /s/ E. B. Burleson
Vice President

AGREED this 27 day of April, 1967.
/s/ C. C. Burnett
C. C. Burnett"

Letter dated April 28, 1967. Plaintiff's exhibit 10.

"The First National Bank of Waco, Trustee
Waco, Texas
Gentlemen:

In connection with the loans made by you, as Trustee of the 'C & G Trust', to the JPG Oil Company, upon my authorization, I hereby ratify and approve the acts of the Trustee in the making of said loans and the taking of security therefor, and in foreclosing liens on the property of JPG Oil Company by Trustee's sale or, if tendered, by accepting a deed from Paul Goldsmith of 15/128ths undivided operating interest in the Rousseau Gas Unit in lieu of Trustee's deed for a 1/8th interest therein. If said deed is tendered and accepted, I authorize you to release this lien pertaining to Dr. Paul Goldsmith.

You will recall that at the time the JPG Oil Company executed certain Deeds of Trust to

bank because the evidence raised issues of fact as to the gross negligence and constructive fraud of the bank in failing to (1) preserve, collect, and apply the proceeds of notes representing loans by Fidelity Finance, assigned to the bank as collateral security for loans to the C & G Trust, to the indebtedness of the C & G Trust to the bank; (2) in failing to ascertain that the necessary assignment of leasehold interest had been obtained by the JPG Oil Company prior to advancing $50,000 loaned to JPG Oil Company by the bank as trustee of the C & G Trust in September and November of 1966; and (3) as trustee of the C & G Trust, in obtaining loans from the bank, as creditor, for the purpose of making advances to Fidelity Finance from and after July 13, 1966. We disagree.

Considering all the evidence in the light most favorable to Burnett and indulging every reasonable inference from the evidence in Burnett's favor, we find no evidence the bank, as trustee, failed to disclose full information to Burnett regarding its handling of all the questioned loans; nor is there evidence that the bank misrepresented anything to Burnett with respect to its handling of the loans; nor is there any evidence of wilful, deliberate conduct on the part of the bank, as trustee, to constitute gross negligence. *Anderson v. Moore,* 448 S.W.2d 105 (Tex.1969); *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752 (Tex.1970); *Triangle Motors of Dallas v. Richmond,* 152 Tex. 354, 258 S.W.2d 60 (1953).

■ We overrule appellant's contention the trial court erred in rendering judgment for the bank because the transfer of the M & B, McKethan, and Spell notes by the bank as trustee of the C & G Trust to the Burnett Trust which it also served as trustee was illegal and in direct violation of the Texas Trust Act. This argument is founded on the provisions of Art. 7425b–13, V.A.C.S. (1960) which states:

"Trustee selling from one trust to another trust

A trustee shall not as trustee of one trust sell property to another trust estate of which it is trustee, except bonds, notes, bills and other obligations issued, or fully guaranteed as to both principal and interest, by the United States of America, which may be so sold and transferred by the trustee, from one trust estate to another, at the current market price. Acts 1943, 48th Leg. p. 232, ch. 148 § 13."

Article 7425b–22, V.A.C.S. (1960) provides:

"Power of trustor

The trustor of any trust affected by this Act may, by provisions in the instrument creating the trust, or by an amendment of the trust if the trustor reserved the power to amend the trust, relieve his trustee from any or all of the duties, restrictions, and liabilities which would otherwise be imposed upon him by this Act; or alter or deny to his trustee any or all of the privileges and powers conferred upon the trustee by this Act; or add

the First National Bank of Waco, Texas, Trustee of the C & G Trust it was understood that JPG Oil Company had sold or assigned certain interests to various individuals including myself to obtain working capital for the operation of JPG Oil Company. Some of these assignments had been duly executed and placed of record and others had not and it was agreed that when these assignments had been completed and recorded that they would be released from the Deeds of Trust executed by JPG Oil Company. In other words, it was known at the time of the execution of the Deeds of Trust that JPG Oil Company did not own 100% of the interest covered by the Deeds of Trust.

Consequently, I also authorize you to deliver partial releases of the deed of trust lien executed by JPG Oil Company covering individual interests heretofore assigned by the JPG Oil Company, as per copies of releases attached hereto. I will indemnify the Bank, as Trustee, or otherwise, against any losses, claims or expenses in connection with the making of said loans, the collection and foreclosure thereof, and the operation of the interests received, by foreclosure or otherwise from the JPG Oil Company and Dr. Paul Goldsmith.

Yours very truly,
/s/ Clarence C. Burnett
Clarence Burnett"

duties, restrictions, liabilities, privileges, or powers to those imposed or granted by this Act; but no act of the trustor shall relieve a corporate trustee from the duties, restrictions, and liabilities imposed upon it by Sections 10, 11, and 12 of this Act. Acts 1943, 48th Leg. p. 232, ch. 148 § 22."

The trust agreement gave the trustee full power "to sell, exchange, partition, convey, dispose of, invest and reinvest said trust estate upon such terms as to it may be deemed advisable." The trustee also "is hereby granted, full and complete general right, power and authority to do and perform any and all acts necessary or convenient in the handling of the trust property, and in the administration of the trust estate, and in carrying out the powers granted to the Trustee, and to execute any and all instruments or documents necessary or convenient in connection therewith, to the same extent as if the Trustee were the owner of the full fee simple title to the trust property, it being understood that the enumeration of specific powers in any part of this instrument shall not be construed to limit the general authority hereby granted to the Trustee." The trustee was given specific power to deal with The First National Bank of Waco. The instruments also provide "the Trustee shall have authority to make loans or investments without any restrictions and at its sole judgment and discretion."

The trust instrument relieved the trustee of any restrictions on investment. This is permitted by Section 22 except as to Sections 10, 11, and 12. Therefore, Section 13 is not controlling. There was no violation of the Texas Trust Act by the trustee in the transfer of the notes.

Burnett urges the trial court erred in rendering judgment in favor of the bank because the evidence raised fact issues as to misrepresentations by the bank to him at and prior to the execution of the guarantees and/or indemnities of September 27, 1966, and April 27, 1967. He contends the following misrepresentations were made:' (1) the bank was performing its discretion-

ary functions in the discharge of its duties as trustee of the C & G Trust; (2) the nature of the performance of loans by Fidelity Finance Company which were pledged to the bank as collateral for the repayment of loans by the bank to the C & G Trust; and (3) the bank's intention to rely solely upon such guarantees and/or indemnities, and not on the prudence of the investments by the bank as trustee of the C & G Trust in making loans and advances, as creditor, to the C & G Trust.

Such arguments challenge the trial court's action in denying Burnett's defensive theory of fraud in the inducement of the guarantees and/or indemnities of September 27, 1966, and April 27, 1967. There are no contentions of accident or mistake.

■■■ The trial court having instructed a verdict in favor of the bank, there must be no evidence having probative force upon which a jury could have made a finding in favor of Burnett. *Anderson v. Moore*, 448 S.W.2d 105 (Tex.1969). To make this determination all evidence must be considered in the light most favorable to Burnett and every reasonable inference deducible from the evidence is to be indulged in his favor. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.1970); *Triangle Motors of Dallas v. Richmond*, 152 Tex. 354, 258 S.W.2d 60 (1953).

Burnett gave the only testimony in support of his position. He testified as follows:
"Well, Mr. Harrison whom I had known and been doing business with for many, many years, called me and told me that the Examiners had been here examining the thing and he said they are—they have consolidated your personal loan. At that time I owed this Bank quite a lot of money, personally, for which I had Franklin Life stock pledged as collateral; that was what my stock was pledged for as collateral for my personal loan and my son had some money borrowed here. Well, he told me that the Bank Examiners had lumped all of my personal loans, the loans of my sons and the loans to the C & G Turst into one ball of wax and that it threw me to be well over their

legal limit. And he said, 'Now we can handle that part of it but we're going to have to have your guarantee of the loans made to the C & G Trust.' And I said, 'Mr. Harrison, that wasn't the purpose of my setting up the Trust. My purpose was to get away from the personal liability and to put the responsibility for management on the Trust,' and I said, 'This doesn't strike me as being the right thing to do.' And he said, 'Well, now, Clarence,' he said, 'We didn't think that they would throw these loans all together but they have and that has created the problem.' And, he said, 'If you don't do that we are going to have to call in all of these loans of Fidelity Finance,' and he said, 'That would be a shame because you're doing so well, Fidelity Finance is doing so well.' He said, 'You think about it and call me back or go over and see Mr. Dennis in a few days.' . . . But when I talked to Mr. Dennis about this situation and about what Mr. Harrison had said to me, Mr. Dennis assured me that there wasn't anything wrong, that this was a beautiful operation and that it was simply to satisfy the Examiners."

His testimony regarding the execution of the April 27, 1967, instrument was:

"Q Do you recall the circumstances under which it was executed?

A Yes. Mr. Burleson called me and wanted me to come by his office and when I did he handed this four or five page deal over to me and said, 'Now we've got to satisfy the Examiners and you need to sign this,' more or less clarifying how we are operating and maybe he said something about in case of my death, why, they'd want it for the record, you know, how this thing was to be handled. Actually, he didn't call it a guarantee or I wasn't really thinking of it as a guarantee at the time that I signed it although it had some representation in it to that effect . . . ."

Burnett as stockholder, director, and Secretary-Treasurer of Fidelity Finance who signed the monthly reports furnished the bank as to Fidelity's financial condition was aware of its conditions.

Fraud is an affirmative defense. The court in *Oilwell Division, United States Steel Corporation v. Fryer*, 493 S.W.2d 487 (Tex.1973) said:

"The authorities announce the general rule that to constitute actionable fraud it must appear: (1) *That a material representation was made;* (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury . . . Each of these elements must be established, . . . and the absence of any one of them will prevent a recovery . . . ." (emphasis added)

There is no evidence of any false representations by the bank of any material fact either as to how it was performing its functions as trustee, or the nature of the performance of loans by Fidelity pledged to the bank or that the bank relied solely on the guarantees. The points of error are overruled.

We overrule Burnett's complaint that the trial court erred in denying his recovery of the shares of Franklin Life Insurance Company stock. He argues the undisputed evidence shows the stock was pledged and accepted only as collateral for his personal loans which were paid at the time Burnett demanded return of the stock.

The collateral agreement dated June 1, 1970, which was received in evidence without objection and no claim that the instrument was ambiguous provided in part:

"The Undersigned, for a valuable consideration, agree with THE FIRST NATIONAL BANK OF WACO, TEXAS, as follows:

For the purpose of securing said Bank in the payment of all indebtedness now owing to it or which may hereafter become owing to it by the undersigned or by

## C. C. BURNETT

or by any or all of such parties, the undersigned hereby pledge, transfer and deliver to said Bank the following securities, to-wit:

11,017 Shares Franklin Life Insurance Co. The undersigned further agree with said Bank as follows:

That any and all securities or other property heretofore, now or hereafter pledged or delivered by any of the undersigned to said Bank to secure any indebtedness to said Bank, shall be held and construed to be pledged hereunder and as if fully described herein, and may be held by said Bank as security for any and all debts and obligations of any or all of undersigned to said Bank for the payment of money, whether such debts, liabilities and obligations now exist or are hereafter incurred or else and whether the obligation or liability thereon of the undersigned or any of them be direct, contingent, primary, secondary, joint, several, joint and several, or otherwise, and whether such obligations be of the same character or different . . ."

The language was the same as contained in a collateral agreement interpreted by the court in *Moore v. First National Bank of Abilene,* 345 F.2d 638 (5 Cir. 1965). In the *Moore* case, Estes had given a note to the bank and executed a separate collateral agreement covering various stocks. Subsequently, First National of Abilene obtained from First National of Pecos certain notes signed by another person and endorsed by Estes. On default, the stock was sold and the monies received were applied both to the direct obligation of Estes and the obligations on which he was secondarily liable. The court said:

"Two questions are presented on this appeal. First, the substantive question of whether the broad language of the Collateral Agreement was properly interpreted to include the debts of Estes as surety on the Dingler notes. It is difficult to conceive how more inclusive language could have been used, and in view of the pattern of dealings between the parties we are of the opinion that the determination of the District Judge was clearly correct."

█ Burnett argues the trial court erred in failing to dismiss or abate the bank's cause of action on the guarantees and/or indemnities because the bank failed to make C & G Trust a party defendant or involuntary plaintiff. He contends the bank's action against him should have been abated until judgment had been obtained against the C & G Trust and all collateral pledged by the trust to secure the repayment of the loans by the bank was collected and applied to the indebtedness of the trust to the bank.

Burnett did not file a motion for new trial which is a necessary prerequisite to a consideration of the matters stated in Rule 325, T.R.C.P. The rule provides:

"In cases of motions for continuance, or for change of venue, or other preliminary motions made and filed in the progress of the cause, the rulings of the court thereon shall be considered as acquiesced in, unless complained of in the motion for new trial; and the judge may recite in his order disposing of the motion for new trial the grounds of such ruling. Nothing in Rule 324 shall render a motion for new trial unnecessary in the instances mentioned in this Rule nor in instances of newly discovered evidence, misconduct, fraud or the like."

In analyzing other preliminary motions to which Rule 325 refers, the court in *City of Roma v. Starr County,* 428 S.W.2d 851 (Tex. Civ.App.—San Antonio 1968, writ ref. n. r. e.) said:

"The language of Rule 325 falls into a familiar pattern. It consists of an enumeration wherein general words follow specific terms. The specific terms are 'motion for continuance' and motions 'for change of venue,' followed by the general words 'other preliminary motions.' The specific words refer not only to preliminary motions, but to preliminary motions of a certain class . . . The specific terms are descriptive of preliminary maneuvers which result in the entry of an

order which is interlocutory, rather than final, in the sense that no appeal lies therefrom in the absence of special provisions authorizing an appeal seeking appellate review of such order prior to the rendition of a final judgment. In accordance with a well recognized canon of construction which, while it rests purely on form, has been frequently applied, in such a situation the general terms will be construed to embrace only things similar in nature to those enumerated by the preceding specific terms . . . If the general language of Rule 325 is restricted to motions of the same class as those specifically enumerated, the Rule does not apply to a 'preliminary' ruling which terminates the litigation . . . "

These complaints of Burnett are to preliminary rulings of the court which would not terminate the litigation. The points of error were not properly perfected in a motion for new trial. They are overruled. *City of Corpus Christi v. Gregg,* 155 Tex. 537, 289 S.W.2d 746 (1956); *Miller v. Riata Cadillac Company,* 517 S.W.2d 773 (Tex. 1974); *Goldring v. Goldring,* 523 S.W.2d 749 (Tex.Civ.App.—Fort Worth, 1975, writ dism'd).

■ Burnett contends the trial court erred in failing to submit any issues inquiring whether the bank delegated the performance of its discretionary functions as trustee of the C & G Trust to another and whether the bank's action, as creditor, prejudiced and wasted collateral given as security for loans by the bank to the Trust.

Rule 324, T.R.C.P., provides in part:

"In all cases tried in the county or district court, where parties desire to appeal from a judgment of the trial court, a motion for new trial shall be filed as a prerequisite to appeal; provided that neither a motion for new trial nor an assignment therein shall be a prerequisite to the right to complain on appeal of the action of the court in giving a peremptory instruction, or in withdrawing the case from the jury and rendering judgment, or in rendering or refusing to render judgment non obstante veredicto or notwithstanding the finding of the jury on one or more special issues, or in overruling a motion for judgment on the verdict made by the party who becomes appellant; . . . "

Chief Justice McCloud said in *Spillman v. City of Dallas,* 535 S.W.2d 717 (Tex.Civ. App.—Eastland, 1976):

"Where the court, in a jury case, grants an instructed verdict and an appeal is taken without filing a motion for new trial, the appellant is limited on appeal to a complaint that the court erred in granting the instructed verdict.

In *Wagner v. Foster,* 161 Tex. 333, 341 S.W.2d 887 (1960), the court said:

'The case was tried to a jury, and the first question to be decided is whether respondents-appellants were required by the Rules of Civil Procedure to file a motion for new trial and to preserve the error complained of . . . '

'While trial court action denying a motion for judgment non obstante veredicto would seem, under the literal wording of Rule 324, to eliminate altogether the necessity for filing a motion for new trial as a prerequisite to appeal, except as to the matters designated in Rule 325, it was not so intended and it has not been and should not be so construed . . . The purpose of the quoted provision of Rule 324 as it relates to a party whose motion non obstante veredicto is denied is to authorize appeal on the grounds stated in the motion without the necessity of incorporating the grounds in a motion for new trial. *It was not the purpose of that language to eliminate the necessity for complaining in a motion for new trial of other errors committed on the trial.* A party whose motion for judgment non obstante veredicto is denied may forego the filing of a motion for new trial and predicate his points of error on appeal on the matters included in such motion. *If he follows that course, he may complain on appeal only of the denial of the motion non obstante veredicto . . . '* (emphasis added)"

The complaints of the trial court's failure to submit the requested issues were not assigned as error in a motion for new trial. They are overruled. *Goldring v. Goldring,* supra.

We have considered and overruled all points of error.

The judgment of the trial court is affirmed.