**LAID RITE, INC., et al., Appellants,**

v.

**TEXAS INDUSTRIES, INC., Appellee.**

No. 17523.

Court of Civil Appeals of Texas, Fort Worth.

June 28, 1974.

Oscar H. Mauzy, Dallas, Street, Swift & Brockermeyer, Fort Worth, and Dean Carlton, Dallas, for appellants.

DeVore, Bagby, McGahey & Ross, and Philip C. McGahey and Stewart W. DeVore, Arlington, for appellee.

## OPINION

BREWSTER, Justice.

This suit was filed by the plaintiff, Texas Industries, Inc., against the defendants, Laid Rite, Inc., and Tom Russell, Jr., an individual, seeking to recover from defendants the principal, interest and attorneys' fees provided for in a promissory note that defendants had executed on April 30, 1968, payable to plaintiff on or before April 30, 1969. The note was for the principal sum of $47,658.02, and it provided for payment of interest at six percent.

Defenses to the note alleged in defendants' answer were: (1) the execution of the note was induced by false promises of plaintiff's agents, to the effect that Laid Rite would be given $2.00 rebate on each cubic yard of concrete it purchased from plaintiff and that defendants would not be charged any interest on the debt involved; (2) that the note has been paid in full if defendant is given credit for the rebates he was promised and if the interest charged by plaintiff is deducted as the parties agreed; (3) the execution of the note was induced by fraud and duress; and (4) that the interest charged defendants on the note sued on was usurious.

Certain names will be often referred to in this opinion. For the sake of brevity we will refer herein to Texas Industries, Inc. as TXI; to Southwestern Financial Corporation as SFC; to Laid Rite, Inc., as Laid Rite; and to Kiest Forest Development Corporation as Kiest Co.

The defendant, Tom Russell, Jr., filed a cross-action and counterclaim against TXI and SFC, which latter corporation was a wholly owned subsidiary of TXI.

In Russell's counterclaim he alleged in substance that at all times involved SFC was a wholly owned subsidiary of TXI and

that each acted as the alter ego of the other and that, in the alternative, they conspired with and aided each other and each received the benefits of the wrongful acts involved. Russell further alleged that on April 19, 1966, he personally was indebted to SFC for over $200,000.00; that on that date Laid Rite owed on open account $49,872.84 to TXI; that on that date Kiest Co. owed TXI on open account $18,565.77; that Russell had no personal liability on these two corporate debts and that these two corporations, SFC and TXI, conspired to force Russell to execute notes personally for these two debts that Laid Rite and Kiest Co. owed on open account to TXI by threatening to call all of Russell's personal obligations owed to SFC immediately due if Russell did not personally sign the note sued on, which he had not personally owed, and if he did not also personally sign a note to TXI on the Kiest Co. obligation.

Russell further alleged that TXI and SFC also told him that the debts he personally owed to SFC would not be renewed unless he did personally sign such notes covering the debts that Laid Rite and Kiest Co. owed to TXI; that when SFC required Russell to obligate himself personally on the notes of Kiest Co. and Laid Rite as a consideration for the continued use of monies that Russell already personally owed to SFC, its effect was to charge him an unlawful rate of interest for the use of such money. He alleged that since the interest thus charged was in excess of double the amount of interest that could be legally charged, he was entitled to recover from cross-defendant the penalties provided by statute for charging usurious interest.

At the conclusion of the evidence offered during a jury trial, the trial court instructed a verdict for TXI and against the defendants, Russell and Laid Rite, on all parts of the case except the issue of the amount of plaintiff's attorneys' fees. Judgment was then rendered that TXI recover from Russell and Laid Rite $75,540.-56 as principal, interest and attorneys' fees on the note sued on and that Russell and Laid Rite take nothing on their cross-action and counterclaim. This is an appeal by Russell and Laid Rite from that decree.

The judgment awarding the plaintiff, TXI, a recovery on the note against the defendant, Laid Rite, is affirmed. The judgment in so far as it awards plaintiff a recovery on the note it sued on as against Russell, personally, and in so far as it decreed that Russell take nothing on his counterclaim and cross-action against the two cross-defendants, TXI and SFC, is reversed and remanded to the trial court for a new trial.

In his 6th point of error Russell contends that the court erred in refusing to admit evidence that he was forced by duress and threats to execute the note in question. His 7th point of error is that the court erred in instructing a verdict against him because there was evidence that raised his defense that he was caused to execute the note by duress. His point of error No. 8 is that the court erred in refusing to admit evidence tending to prove that he was induced to execute the note by false promise of rebate.

We overrule appellants' points Nos. 6, 7 and 8.

The undisputed evidence shows that prior to April 19, 1966, the debt that is now evidenced by the note sued on was owed by Laid Rite to TXI and that such debt was then in the form of an open account.

On April 19, 1966, a note was drawn, payable to TXI, for the amount of the balance owed on that open account and the defendants, Russell and Laid Rite, executed the note as makers.

That original note was payable in installments with the final installment of principal being due on or before March 19, 1967. The parties renewed that note on April 10, 1967, with the renewal note providing that the final payment thereon was to be due April 10, 1968. On April 30, 1968, the parties again renewed the obligation when

Russell and Laid Rite executed the note sued upon for $47,658.02.

The record shows without dispute that the statements that Russell claims to have been made to him that constituted duress and fraud in the inducement causing him to sign the note personally were made to him in April, 1966, and that he thereafter executed two renewals of the note, including the one being sued on here.

It is thus undisputed that Russell had full knowledge of all the facts which he now alleges constitute fraud in the inducement and duress at the time he executed the two renewals of the note.

■ We hold that when Russell executed the renewal note sued on with full knowledge of all the facts that he now alleges to constitute duress and fraud in the inducement he waived such defenses. Maddox v. Oldham Little Church Foundation, 411 S.W.2d 375 (Tyler Civ.App., 1967, ref., n. r. e.); Knox v. First National Bank of Mesquite, 422 S.W.2d 832 (Waco Civ.App., 1967, no writ hist.); Vick v. Downing, 120 S.W.2d 279 (Eastland Civ.App., 1938, no writ hist.); and Braxton v. Haney, 82 S.W.2d 984 (Waco Civ.App., 1935, writ ref.).

Defendants' point of error No. 9 is that the court erred in excluding testimony of the governmental investigation and indictment relating to price fixing after plaintiff's officer had testified that no investigation existed.

We overrule this 9th point of error.

Russell had testified during the trial that plaintiff had promised to give him a rebate of $2.00 per cubic yard on all concrete purchased and had also promised not to let any interest accrue on the account. Defendants had pleaded that these promises were false and fraudulent promises and that defendants were induced by them to sign the note in question. They contended that this evidence was therefore admissible during the trial, even though it was in variance with and contradicted the terms of the note sued on. Defendants contended that the plaintiff's agent told them the reason the rebate was not given was because plaintiff was under investigation for price fixing. Evidence to that effect was excluded and that ruling is the basis for this 9th point of error.

It is apparent that the only issue in the case that this excluded evidence would relate to is the question of whether or not the two allegedly false promises referred to relating to the rebate and waiver of interest were in fact made and constituted a defense of fraud in the inducement of defendants to execute the notes.

We have held above that as a matter of law this claimed defense of fraud in the inducement was waived by defendants, even if it had in fact once existed, by their admitted action in later executing the renewal notes with full knowledge of all the facts.

■ Since the excluded testimony only related to that issue of fraud in the inducement, which went out of the case, the trial court did not commit a prejudicial error by excluding it.

In Russell's 2nd and 5th points of error he contends that the trial court erred in directing a verdict because his cross-action based on usury was established in his favor as a matter of law and because the evidence in the case proved prima facie a cause of action for usury against plaintiff on which he was entitled to have a trial by jury.

We overrule the 2nd point of error and sustain the 5th point holding that Russell did prove prima facie a cause of action for usury on which he was entitled to have the jury pass.

The problems here involved are complicated.

The substance of the allegations in Russell's cross-action wherein he seeks to recover from TXI and SFC for usury is the

following: that prior to April 19, 1966, Russell was personally indebted to SFC for a balance of over $240,000.00 on four separate loans; that at this same time Laid Rite owed TXI $49,872.84 on open account and Kiest Co. owed TXI on open account $18,565.77; that SFC at all times in question was the wholly owned subsidiary of TXI and each acted in this transaction as the alter ego of the other; that TXI and SFC agreed to continue to renew and extend the personal notes Russell owed to SFC totaling over $240,000.00 and agreed that it would not then demand immediate payment thereof if in consideration for such agreement, Russell would at that time make some partial payments on all debts involved and would personally sign and become personally liable on (1) a note, along with Laid Rite, to cover the open account indebtedness owed by Laid Rite to TXI in the sum of $49,872.84 and (2) a note, along with Kiest Company for $18,565.77 to cover the open account indebtedness owed by Kiest Company to TXI; that he had not been personally liable for these two obligations prior to that time; that the amounts of these two notes that Russell agreed to become personally liable on was interest that plaintiff charged him for the continued use of the more than $240,000.00 indebtedness Russell personally owed SFC; that when you added the amounts of those two notes to the 6% interest provided for in the notes evidencing Russell's loans from SFC and to certain other interest charges exacted by the lenders from Russell, such as the commitment fees charged, that the rate of interest agreed upon by the parties was in excess of 20% and that Russell was therefore entitled to recover back the statutory penalties of double the amount of the interest plus a forfeiture and repayment of the principal, plus interest and attorneys' fees.

The evidence is undisputed that after some payments made by Russell on April 19, 1966, were credited, he was then personally indebted to SFC for a balance on four different promissory notes as follows:

1. Note for $12,500.00, bearing 6% interest payable to SFC;

2. Note for $12,000.00, bearing 6% interest payable to SFC;

3. Note for principal balance of $149,938.37, bearing 6% interest and payable to SFC (was a renewal of an original note in the sum of $225,000.00).

4. Note for principal balance of $67,704.63, bearing 6% interest and payable to SFC (was a renewal of original note for sum of $111,250.00).

These four notes were all renewal notes.

The total amount personally owed by Russell to SFC on those notes at that time was $242,143.00. Each of the notes provided for the payment of interest at the rate of 6% per annum.

The record is also undisputed that the land which was put up as security for notes we have numbered above as 3 and 4 was divided into lots and it was a part of the agreement of the parties (as shown by defendants' Exhibit 9) that as an additional charge for the use of the money involved in those two loans Russell would pay to SFC, as a commitment fee, $175.00 per lot. As of April 19, 1966, there remained unsold 83 lots on which the commitment fee agreed upon had not been paid. This was undisputed. The record shows that there were originally 127 such lots securing both notes.

Eighty-three lots multiplied by the $175.-00 per lot commitment fee would equal $14,525.00.

■ TXI and SFC admit in their briefs that this commitment fee, which was charged Russell by SFC for making the loan, is interest. It clearly falls within the definition of interest contained in Art. 5069, Sec. 1.01, wherein it provides that "'Interest' is the compensation allowed by law for the use or forbearance or detention of money . . . ."

On this see Morris v. Miglicco, 468 S. W.2d 517 (Houston Civ.App., 14th Dist., 1971, writ ref., n. r. e.).

The question exists as to whether or not the amount of the two notes that Russell says he was required to execute is interest, as is claimed by Russell.

█ There are many cases that hold that where a lender, as a condition of a loan and as a consideration for making it, requires the borrower to assume or pay in whole or in part, the debt that another owes to this same lender; that the amount of the assumed or paid-off debt will be considered as interest in determining whether or not the loan is usurious. See Vee Bee Service.Co. v. Household Finance Corp., 51 N.Y.S.2d 590 (Sup.1944); Curtiss National Bank of Miami Springs v. Solomon, 243 So.2d 475 (Fla.App., 1971); Simpson v. Charters, 188 Ga. 842, 5 S.E.2d 27 (1939); Darden v. Schuessler, 154 Ala. 372, 45 So. 130 (1907); Winder Nat. Bank v. Graham, 38 Ga.App. 552, 144 S.E. 357 (1928); Janes v. Felton, 99 W.Va. 407, 129 S.E. 482 (1925); Ferdon v. Zarriello Bros., Inc., 87 N.J.Super. 124, 208 A.2d 186 (1965); and Canal-Commercial Trust & Savings Bank v. Brewer, 143 Miss. 146, 108 So. 424 (1926).

The rule of law just stated appears to us to be a sound doctrine and we know of no reason why it should not be applied as the law in Texas. We have seen no Texas cases holding one way or the other on this exact point.

Russell's contention is that he was charged as interest by cross-defendants the 6% interest on the four loans as provided for in the notes, plus $14,525.00 in commitment fees, plus the amount of the two notes that he was required to sign and become personally liable upon as a consideration for TXI and SFC not calling all of his personal notes totaling $242,143.00 immediately due.

This is not a case where, as a matter of law from the undisputed facts of the case,

the rule just above referred to is applicable. It will be noted that in each of those cases cited the loan that the borrower was required to assume or to pay off was also owed to the same person that was lending the money to the borrower.

In the case at bar, on its face, the lender (SFC) who was allegedly making the agreement to extend the debts of Russell is not the same legal entity as the lender (TXI) to which Laid Rite's and Kiest Company's notes being assumed by the borrower is payable.

It is one of Russell's contentions that the holding of the cases heretofore cited is applicable to the fact situation in this case because, in fact, the lender (SFC) to Russell of his $242,143.00 personal obligation is in this transaction the same as the lender (TXI) to Laid Rite and Kiest Company of the debts that Russell was required to assume because each acted as the alter ego of the other in such transaction.

█ We hold that the evidence presented during the trial raised a fact issue on this alter ego question. See State v. Swift & Co., 187 S.W.2d 127 (Austin Civ.App., 1945, writ ref.) and 14 Tex.Jur.2d 133, Corporations, Sec. 13.

We will set out the evidence that we believe raised the issue.

Johnnie Carpenter, the credit manager of TXI, testified that TXI is a seller of concrete; that SFC, a corporation, is a wholly owned subsidiary of TXI; that he is also the credit manager of SFC; and that R. E. Kibbe, who handled the April 19, 1966, transaction with Russell, was treasurer of both TXI and its subsidiary, SFC.

Tom Russell, Jr., a defendant and cross-plaintiff herein, testified: that in dealing on the personal notes that he owed to SFC up to April 19, 1966, he always dealt with R. E. Kibbe; and that SFC is a financial corporation that dealt in financing the purchase of land for builders and developers in order to get them to purchase the prod-

ucts sold by TXI, the parent corporation, such as cement, brick and stone.

The following is testimony given by Russell during the trial:

"Q (By Mr. Carlton) Did Mr. Kibbe have any connection with Southwestern Financial Corporation as well as with Texas Industries?

"A He was Southwestern Financial Corporation in all of my dealings with him.

"Q How did you distinguish whether you were dealing, when you were talking with Mr. Kibbe, with Texas Industries or with Southwestern Financial?

"A There was no way. He talked for both of them, as did Mr. Carpenter and the other people. They didn't distinguish.

"Q Did he sign documents with you for both of them as well?

"A Yes."

In April, 1966, Laid Rite was indebted on open account to TXI in the sum of $49,872.84 and Kiest Co. was indebted on open account to TXI in the amount of $18,565.77. Both of these debts were past due and unpaid at the time that Russell and Kibbe met in early April, 1966, to discuss the situation. Laid Rite and Kiest Co. were corporations that were almost wholly owned by defendant, Russell.

Russell testified that at this meeting with Kibbe the following was said between him and Kibbe:

(Mr. Russell) "The first part of April I (Russell) was talking with Mr. Kibbe and he came to my office to have lunch and at that time the situation was awfully bad. Laid Rite and Kiest Forest both were broke, didn't have any money, and I told him that. I said that I just don't see how we can go on because there is just no money. The operation is bankrupt and I think the thing we ought to do is take bankruptcy. Mr. Kibbe up until that time had been a very good friend. . . .

"The conversation was that, 'Tom, if you take—if Laid-Rite and Kiest Forest take bankruptcy' he said, 'I will bankrupt you personally. *We* will call everything that you owe, the personal notes.' And I told him they're not due, I don't see how he could do that. He said, 'Well, I can do it.' And he said, 'You've got to learn who is the boss.' He says, *'We're* the boss.' He says, 'I'm going to tell you how it is.' He says, 'You either sign the notes individually and bring them to me'—and then he listed the following things that I had to do. (Emphasis ours.)

" . . .

"I told him—he said 'These are the things you are going to have to do.' He said, 'You bring a check to me' and then listed the checks he wanted. He had it on a slip of paper. The checks were $1,856.80 on the Kiest Forest note, a check for $1,108.29 for Kiest Forest note.

"Q When you say notes, those were still open accounts as of that time, were they not? This is before April 19th?

"A Yes, one of them was an open account and one of them was a—yes, they both were. Excuse me. I believe that's correct. I'm really not sure about one of them.

" . . .

"Yes, sir. And then 'Bring $500.00 to me for Laid-Rite, Inc. Bring $5,500.00 from Kiest Forest for the land loan.' I said, 'They're not even due, how am I going to do that? There's not any payment due on that.' He said, 'You bring it or else that's it.' He said, 'Bring $2,700' —and I don't know where he got the figure from—'55.59,' and he said, 'If you don't do that', he says, 'I'm bankrupting you. I'm giving Carpenter on April 19'— that was a Saturday—he said, 'I'm giving Carpenter notice to pull the records up to date to April 19, figure the interest and close it out.' He said, *'We're* going to foreclose you.' I said, 'That's blackmail.' He said—

"MR. McGAHEY: We renew our objection.

"THE COURT: Overruled for the limited purpose offered.

"A He said, 'That's the way it is, Tom.' He said, 'You're going to learn right now that *we* mean business.' And the decision, when he said that, that I had to make, was whether to take bankruptcy or sign this note, which was not my obligation. (Emphasis ours.)

"Q This note—which note are you speaking of right now when you said 'this note'?

"A The Laid-Rite, Inc. note.

"Q What about the Kiest Forest open account note?

"A Both of them were the same way.

"Q Did you have any personal liability on either of those notes up to that point?

"A I did not.

"⋅ ⋅ ⋅

"He told me—he called me and he said 'I have had Carpenter bring all the interest up to date', and he said, 'You are going to pay off—you're going to co-sign this note personally, and this Kiest Forest'—he said, 'I am calling your other three notes unless you do'. He said, 'I have instructed Carpenter to bring the interest up to date. You bring me $12,500.00'—even on notes that weren't due. I have a list of the checks, sir. This was in April of '66, that I had to bring him. And he said, 'If you don't,' he said, 'I'm going to bankrupt you and I'm going to bankrupt Laid-Rite and Kiest Forest Development Corporation and you personally.' I had no other choice. And I took him the $12,500.00 which was a check on all the notes."

The record shows that on April 19, 1966, Russell did make part payments on each of the notes and debts above referred to and that he did on that day execute and become personally liable on (1) the Laid Rite note,

a renewal of which is herein sued upon, and (2) the Kiest Co. note to TXI for $18,565.77.

An additional fact issue which we believe to be raised by the evidence is the question of whether or not the parties did in fact make such an agreement as that alleged by Russell, the substance of which we have above set out.

█ The biggest part of the evidence offered tending to establish such agreement was the testimony of Russell. Since he is an interested party his testimony would not establish such an agreement as a matter of law. It is true that the evidence *does* show that he did sign and become personally liable to TXI for the debts of the two corporations that he substantially owned, but the evidence does not show as a matter of law that the consideration for him signing those notes was the agreement of TXI and SFC to not immediately call his notes due and payable and to later renew and extend his notes.

In his first point of error Russell contends that the court erred in directing a verdict against him because as a matter of law he had established that his defense of usury to the note sued on is good.

We overrule that point.

In his 3rd and 4th points, Russell contends that the evidence in the case had created a fact issue as to his defense of usury that he had pleaded as a defense to the note sued on. He contends that for that reason the court erred in depriving him of a jury trial on that issue. We sustain Russell's 3rd and 4th points of error.

It is Russell's contention herein that in so far as he is personally concerned, the note sued on by plaintiff is actually an interest charge that TXI and SFC exacted from him in consideration of their agreement not to call all his personal debts immediately due and to later renew same. He contends that when you add that interest to the other interest charges that they

exacted from him as a consideration for their agreement, that the interest charged him on the agreement was usurious.

■ If these contentions are correct and if the note sued on by plaintiff is, in so far as Russell is personally concerned, a part of the usurious interest they charged him, then there can be no recovery against Russell in this case for the amount of that note. This is true because there can be no recovery of usurious interest from a borrower. Art. 5069, Vernon's Ann.Civ.St.

Whether Russell's contentions are correct and whether the note herein sued on is in fact an interest charge exacted of Russell for the continued use of the money involved in his personal loans hinges on the determination of the fact issues hereinabove pointed out.

Another contention made by Russell is that even if you do not count the amount of these two assumed obligations as interest, that the record still establishes that a usurious interest rate was charged Russell by SFC.

There is evidence that originally there were 86 lots on which the $175.00 per lot commitment fee was to be paid in connection with the $225,000.00 loan to Russell by SFC that is numbered above as loan No. 3 and that there were originally 41 lots on which such fee was to be paid in connection with the $111,250.00 note numbered above as loan No. 4.

Although there is evidence that there remained a total of 83 lots as of April 19, 1966, on the two loans on which the $175.-00 commitment fee remained unpaid, there was no evidence offered, as far as we can find, to show how many of those unpaid commitment fees related to lots securing the loan No. 3 and how many of such fees related to lots securing the loan No. 4.

This would be important because it will be noted that the 1967 renewal of the debt that was originally for $225,000.00 was for a period of one year while the renewals of the note originally in the sum of $111,250.-00 was for an 18 month period.

We are unable to see how we can tell the rate of interest charged for the making of the renewal of the balance of the $111,250.00 obligation for an 18 month period unless we know how much in commitment fees were charged for the use of that particular balance for the 18 month period. The same is true of the loan in the original amount of $225,000.00. One would need to know the amount of the commitment fees charged on the balance of that loan for the renewal of that balance for the one year period because you cannot tell the rate of interest charged on a loan unless you know how much the interest was.

It is necessary that we remand the cross-action and counterclaim for a new trial and we assume that this problem will not be present after another trial.

We also call attention to the fact that it is difficult for us to tell from the record made whether Russell is claiming that regardless of whether an agreement was made as contended for on April 19, 1966, that the individual loans made to him by SFC were usurious anyway.

If he is, then it is difficult for us to see how we can consider the four loans from SFC to Russell as a whole and as one transaction in making that determination.

If the jury found that no such agreement was made on April 19, 1966, as is pleaded by Russell, then in determining whether or not any one or more of the four loans from SFC to Russell was usurious, it would appear to us that we would have to consider each of such four loans as a separate transaction and that each loan would stand on its own bottom. If this is correct then we would need to know the amount of the commitment fees contracted for that on April 19, 1966, remained unpaid on each of the loans to Russell by SFC that we have referred to above as loans No. 3 and No. 4.

The judgment awarding plaintiff a recovery against Laid Rite, Inc., of principal, interest and attorneys' fees as provided for in the note sued on is affirmed. The judgment in so far as it awards plaintiff a recovery on the note it sued on as against Russell, personally, and in so far as it decreed that Russell take nothing on his counterclaim and cross-action against the two cross-defendants is reversed and remanded to the trial court for a new trial. Costs herein are taxed one-half against Laid Rite, Inc., and the other one-half against Texas Industries, Inc. and Southwestern Financial Corporation.