**DELTA ENTERPRISES, a Joint Venture, Appellant,**

v.

**Coke L. GAGE, Appellee.**

No. 17800.

Court of Civil Appeals of Texas, Fort Worth.

Sept. 1, 1977.

Rehearing Denied Sept. 29, 1977.

Day & Day, and Marshall Day, Fort Worth, for appellant.

James S. Robertson, Jr., Dallas, for appellee.

## OPINION

SPURLOCK, Justice.

This case involves a question of usury. Delta Enterprises, a Joint Venture, instituted this suit against Coke L. Gage to recover the statutory penalties under art. 5069–1.06,[1] for Gage's alleged contracting, charging and receiving interest in excess of double the amount allowed by law. Delta sought judgment against Gage for (1) the amount of principal paid, (2) double the amount of interest paid, (3) cancellation of the balance of the indebtedness, (4) cancellation and release of the deed of trust liens, and (5) attorney's fees. In response to special issues, the jury determined that certain sums of money totaling $17,336.59 and $26,940.00 paid by Delta to Gage did not constitute "interest," and it also found that Delta did not tender to Gage the sum of $211,095.55 representing the balance due on two promissory notes. On these findings, the trial court rendered a take-nothing judgment against Delta from which Delta has perfected this appeal.

We affirm.

Delta is a joint venture engaged in the buying and selling of real estate. Gage is involved in the same business activity. On June 7, 1971, Delta and Gage entered into two written option contracts, whereby Gage granted Delta three-year options to purchase two tracts of land in Wise County, Texas. Delta paid $13,500 for the two options. It is the wording of these two options that has given rise to the instant lawsuit. The paragraphs in dispute in the two option contracts read as follows:

"2. The cash price to be paid by Purchaser for said real estate in the event this option is exercised is One Hundred Fifty Thousand Dollars ($150,000.00), of which the sum of Ten Thousand Dollars ($10,000.00) is to be paid in cash upon the exercise of this option, and the balance of One Hundred Forty Thousand Dollars ($140,000.00) is to be paid in accordance with Purchaser's one certain promissory note dated as of June 7, 1971, payable to the order of Seller at Decatur, Wise County, Texas, on or before ten (10) years after date, *bearing interest from date at the rate of 7 per cent per annum*, providing for the payment of $1000.00 per year on principal plus interest commencing 1 year from closing date, with the entire balance of principal and interest due on or before 10 years from closing. Said note is to be secured by vendor's lien and additionally secured by deed of trust with the usual provisions as to acceleration of maturity in event of default." (Emphasis added.)

\*        \*        \*        \*        \*        \*

1. All statutory references are to Tex.Rev.Civ.Stat.Ann.

"2. The cash price to be paid by Purchaser for said real estate in the event this option is exercised is One Hundred Twenty Thousand Dollars ($120,000.00), of which the sum of Ten Thousand Dollars ($10,000.00) is to be paid in cash upon the exercise of the option, and the balance of One Hundred Ten Thousand Dollars ($110,000.00) is to be paid in accordance with Purchaser's one certain promissory note dated as of June 7, 1971, payable to the order of Seller at Decatur, Wise County, Texas, on or before ten (10) years after date, *bearing interest from date at the rate of 7 per cent per annum*, providing for the payment of $1000.00 per year on principal plus accrued interest commencing 1 year from date of closing, with the entire balance of principal and interest due on or before 10 years from date. Said note is to be secured by vendor's lien and additionally secured by deed of trust with the usual provisions as to acceleration of maturity in event of default." (Emphasis added.)

In June of 1973, Delta decided to exercise its option to purchase one of the tracts of land covered by one of the options. By letter on June 27, 1973, Gage's attorney instructed the title insurance company (which prepared the closing statements) regarding the collection of "interest on the purchase price" from the June 7, 1971 date of the purchase of the option to June 30, 1973, the date set for closing the sale. In that letter, Gage's attorney wrote:

"I believe the option agreement is clear and it was Coke's intention that the interest on the purchase price was to commence as of the date of the option, being June 7, 1971. Accordingly, he will insist that upon closing you collect from Delta Enterprises interest at the rate of 7% per annum from June 7, 1971 to June 30, 1973, which sum will be in addition to the $10,000.00 in cash payment on principal provided in the option agreement."

The sale of the first tract of land was completed on June 30, 1973. On that date, Delta (1) paid $10,000.00 in cash, supposedly as a down payment on the purchase price,

(2) paid $17,336.59 which the parties called "interest," and (3) gave Gage a promissory note in the amount of $110,000.00 dated January 1, 1973, bearing interest at seven per cent per annum payable in annual installments commencing June 7, 1974.

The sale of the other tract of land was closed on December 31, 1973. At that time, Delta (1) paid $10,000.00, supposedly as a down payment on the purchase price, (2) paid $26,940.00 which the parties called "interest," and gave Gage a promissory note in the amount of $140,000.00 dated December 31, 1973, bearing interest at seven per cent per annum payable in annual installments commencing December 31, 1974.

It is the sums of $17,336.59 and $26,940.00 that Delta paid to Gage at the time of exercising the respective options that form the basis of Delta's claim for the penalties provided by the usury statute.

What do these sums of money represent?

Delta contends that these sums of money it paid to Gage constitute "interest." As the original option contracts illustrate, these payments were denominated "interest" in the documents involved in the transactions.

Gage contends that the disputed sums did not constitute interest, regardless of how the relevant documents denominated the payments. At the trial, Gage called William A. Nobles to testify concerning the purpose of such payments. Nobles was Gage's attorney in the real estate transactions. On direct examination, Nobles testified that such payments, while denominated "interest," were in fact intended as payments of a variable component of the consideration for the options in question, or as part of an escalating purchase price at which the option could be exercised.

██ Delta asserts that the trial court erred in admitting into evidence in violation of the parol evidence rule the testimony of Nobles as to what the parties intended by the use of the word "interest" in the two options. The parol evidence rule is as follows: "As a general rule, in the absence of fraud, accident, or mistake, extrinsic evi-

dence is inadmissible to vary, add to, or contradict the terms of a valid written instrument that on its face is complete and unambiguous." 23 Tex.Jur.2d *Evidence* § 342 at 500 (1961); *Guisinger v. Hughes,* 363 S.W.2d 861, 865 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.); *American Manufacturing Company of Texas v. Witter,* 343 S.W.2d 943, 947 (Tex.Civ.App.—Fort Worth 1961, no writ). In the present case, the term "interest," as it was used in the option contracts, is ambiguous, and therefore, it was necessary for the trial court to admit testimony that would enable the factfinder to resolve that ambiguity. Accordingly, we overrule appellant's point of error concerning the parol evidence rule.

In response to special issues numbers 1 and 2, the jury found that the disputed payments made by Delta were not "interest." From the jury's answers to these special issues, it appears that the jury concluded from Noble's testimony that the disputed payments constituted a variable payment for the options. Delta has not asserted that there is no evidence to support the jury's answers to these two special issues, and neither has Delta argued that such answers are against the great weight and preponderance of the evidence.

■ Delta, however, does contend that the trial court committed error in denying its motion to disregard the answers of the jury to special issues numbers 1 and 2, and in not granting its motion for judgment non obstante veredicto for the reason that the disputed sums constitute interest as a matter of law. We overrule this point of error. The disputed sums do not constitute interest as a matter of law. It is not the labeling of payments which determines whether they constitute interest, but rather, it is the substance of the transaction which controls. *Gonzales County Sav. & Loan Assoc. v. Freeman,* 534 S.W.2d 903, 906 (Tex.1976). The Court in *Gonzales* wrote:

" . . . The court of civil appeals has improperly stressed the labels placed upon the charges by the savings and loan association as being controlling of their real nature. It has often been said that

courts will look beyond the form of the transaction to its substance in determining the existence or nonexistence of usury. . . . Such a rule is to be fairly applied to both borrowers and lenders alike. *Labels put on particular charges are not controlling. . . ." Id.* (Emphasis added.)

■ The jury determined that the disputed payments were not "interest." There is no jury finding, however, on what the payments actually represented. From a careful reading of the option contracts and the statement of facts in this case, we conclude that the disputed payments actually constituted a part of the purchase price for the properties. It is the *exercisable* price of the option that caused the dispute; i. e., upon exercise of the option, the purchase price was to vary, depending upon when the option was exercised. It appears to the Court that the seven per cent figure was merely a convenient yardstick which was used to express the changing price at which the option itself could be exercised. In this case, the term of each option was three years. The holder of the option had the absolute right for three years to purchase the property; however, the longer the holder of the option waited before exercising the option, the higher the *exercisable* price it would have to pay. We conclude that this was what the parties had in mind when the options were drafted; however, such a conclusion on our behalf is not necessitated. The jury in this case was not asked to find what the payments constituted. The jury found that the disputed payments did *not* constitute "interest," which was the determination that the jury was asked to make in special issues number 1 and 2.

"Usury" has a very precise meaning in the law, as found in art. 5069–1.01(d). Likewise, "interest" has a very precise meaning. Art. 5069–1.01(a) provides:

" 'Interest' is the compensation allowed by law for the *use* or *forbearance* or *detention* of money; provided however, this term shall not include any time price differential however denominated arising out of a credit sale." (Emphasis added.)

In the present case, it is clear that the disputed payments were not compensation for the *use* or *Forbearance* or *Detention* of money. In fact, plaintiff in his "First Original Amended Petition," in reference to the disputed amounts, stated:

". . . It was interest charged and received by Defendant COKE L. GAGE for a period when Plaintiff was under no obligation to him and during a period that *Plaintiff was not enjoying the use, forbearance or detention of the $110,-000.00 or any part thereof.*" (Emphasis added.)

It is clear that even Plaintiff admitted in its pleadings that the disputed sum was not interest, since it was not for the *use, forbearance,* or *detention* of money. The statutory definition is very clear and precise, and if the payments in question do not fall within that definition, as the plaintiff's pleadings admit, then they are not interest as a matter of law.

Two of Delta's points of error constitute objections to the charge given by the trial court. Any objections that Delta had to the charge were waived, since the objections were dictated to the court reporter after the charge had been read to the jury. Rule 272 of the Texas Rules of Civil Procedure is controlling on this point. In reference to the charge, that rule provides:

". . . It shall be submitted to the respective parties or their attorneys for their inspection, and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, *before the charge is read to the jury. All objections not so presented shall be considered as waived. . . .*" (Emphasis added.)

A similar waiver situation arose in *Missouri Pacific Railroad Company v. Cross*, 501 S.W.2d 868, 873 (Tex.1973). In that case, the Texas Supreme Court wrote, "Since all objections of both parties to the court's charge were dictated after the charge was read to the jury, we consider them as waived."

In its supplemental brief, Delta argues that the Texas Rules of Civil Procedure are to be given a liberal construction in order to accomplish their objective in obtaining a just, fair, equitable and impartial adjudication of the rights of litigants. The source of this argument is Rule 1 of the Texas Rules of Civil Procedure, but Delta's argument has been answered by the case of *Missouri Pacific,* supra. In that case, the Texas Supreme Court recognized that generally the rules are to be given a liberal construction, "but they are not to be ignored by agreements of courts and counsel to operate contrary thereto and in violation thereof." *Id.* at 872.

All of Delta's points of error have been carefully considered by this Court, and all of them are overruled.

The judgment of the trial court is affirmed.

HUGHES, J., not participating.