P.A. GOLDRING, et ux. Joyce Goldring, Appellants,

v.

TEXAS COMMERCE BANK–ARLINGTON, Formerly Arlington Bank & Trust, Appellee.

No. 2–82–121–CV.

Court of Appeals of Texas, Fort Worth.

April 28, 1983.

Rehearing Denied May 26, 1983.

Brown, Herman, Scott, Dean & Miles and Dennis M. Conrad, Fort Worth, for appellants.

Bagby, Ross, Devore & Arnn and Wm. L. Bagby, Deborah K. Hartley, Arlington, for appellee.

Before FENDER, C.J., and HUGHES and JORDAN, JJ.

## OPINION

FENDER, Chief Justice.

Plaintiffs below (the Goldrings) appeal from a summary judgment rendered in favor of Texas Commerce Bank—Arlington ("the Bank"), formerly Arlington Bank & Trust, in their suit to recover statutory penalties for usury under Tex.Rev.Civ.Stat. Ann. art. 5069–1.06. They alleged that the Bank demanded and received attorneys' fees, and interest thereon, in excess of the amount specified in their note, as a condition to extending the note and withdrawing the Bank's posted foreclosure on their property and that this constituted "interest" that rendered the note usurious. The Bank answered by general and special denials. Both sides filed motions for summary judgment and after notice and hearing, the District Court denied the Goldrings' motion and granted the Bank's motion.

We reverse and remand because we find that the record before us presents a disputed issue of material fact expressly presented to the court.

On or about June 20, 1972, the Goldrings executed and delivered to the Bank a promissory note in the original principal amount of $89,539.38 (subsequently reduced to $88,717.97 by a credit given to the Goldrings). The note was due on or before one year from date and bore interest at nine percent (9%) per annum, with past due principal and interest to bear interest at ten percent (10%) per annum. The note also contained the agreement that if the note were placed in the hands of an attorney for collection, the Goldrings would pay ten percent (10%) additional on the principal and interest then owing as attorneys' fees. The note fell into default, and the Bank placed it in the hands of its attorney for collection. On July 29, 1976, the attorney, with the Bank's full authorization and approval, made written demand on the Goldrings for payment of the principal in the amount of $88,717.97 and accrued interest on the note through July 31, 1976 in the amount of $38,344.67 and in addition demanded that the Goldrings pay the Bank "$17,593.36 attorney's fees paid for your benefit by Arlington Bank & Trust, as covered by your Indemnity Agreement of the 26th of June, 1972 (a copy enclosed for your file), [and] interest on the attorney's fees advanced of $2,020.35, ...".

It is undisputed that the Indemnity Agreement referred to did not authorize the Bank to collect the attorneys' fees demanded of the Goldrings. In that agreement, between the Goldrings and the Fort Worth Title Company, the Goldrings agreed to indemnify and hold harmless the title company for any claims or losses arising from a law suit to quiet title in the Goldrings to the real estate securing the Bank's note. It is also undisputed that the total amount of principal and interest owed by the Goldrings under the note was $132,330.54, and that ten percent (10%) of that figure was $13,233.05. The Bank threatened to sell the Goldrings' property at foreclosure if the amounts demanded were not paid within a week.

In August, 1976, the Bank, not having received payment in accordance with its

demand, posted the Goldrings' property for foreclosure. Later, the Bank agreed to withdraw the foreclosure and renew the Goldrings' note, but required them to pay the sum of $149,303.79 as a condition for doing so. The Goldrings paid off the note by paying the $149,303.79 demanded. Such sum included $16,973.25 in attorneys' fees and was paid in cash along with an $85,-000.00 renewal note. The $16,973.25 collected was less than the amount of attorneys' fees plus interest demanded by the Bank earlier, but was still in excess of the ten percent (10%) of principal and interest provided.

The Bank asserts that the $17,593.36 was the amount actually paid by the Bank to its attorneys and was demanded pursuant to an oral agreement between itself and the Goldrings that they would pay all attorneys' fees and expenses incurred by the Bank in connection with their various debts and the litigation to quiet their title. In consideration, the Bank agreed to forebear foreclosure and grant a partial release of its lien on the property to allow the Goldrings to find a buyer for the property and to extend time for payment on the note. Mr. Goldring admitted that he agreed "to pay the bank whatever I owed them; there was no other way out." There was never any communication or discussion with regard to structuring the transaction in a way to enable the Bank to charge or receive excessive interest.

Summary judgment is a proceeding created and governed by Tex.R.Civ.P. 166–A. The movant for summary judgment (the Bank) has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movants (the Goldrings) will be taken as true. Furthermore, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in their favor. *Wilcox v. St. Mary's University of San Antonio, Inc.,* 531 S.W.2d 589

(Tex.1975). The rule also provides that "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Both the reasons for summary judgment and the objections to it must be in writing and before the trial judge at the hearing. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979).

The Bank, in its motion for summary judgment, asserted that it was entitled to judgment as a matter of law because the uncontroverted evidence established as a matter of law the absence of two elements in the Goldrings' cause of action:

(a) That there was a corrupt agreement or scheme within the full contemplation of the parties to exact more for the use, forbearance, or detention of money than the maximum allowed by law; and

(b) That the payment of attorney's fees by Plaintiffs constituted payment for the use, forbearance, or detention of money.

The Bank's contention in "a" is that since the note is not usurious on its face, the Goldrings have a burden to show the existence of a corrupt agreement or scheme, within the contemplation of all parties, to circumvent the usury law. *Shook v. Republic National Bank of Dallas,* 627 S.W.2d 741 (Tex.App.—Tyler 1981, no writ). It is undisputed that there was no communication or discussion between the parties with regard to structuring the transaction in a way to enable the Bank to charge or receive usurious interest.

■ This defense is not applicable to the instant case because the Goldrings are not complaining of usury on the basis of the note. The usury complained of here is charges in *excess* of the amount agreed to in the note. The Goldrings do not have the burden of showing a corrupt agreement or scheme when usury is shown on the face of the transaction. A lack of intent by the Bank to charge a usurious rate of interest is no defense, as the Bank concedes, where usury has been proven. The intent necessary is intent to make the bargain made. *Cochran v. American Savings and Loan As-*

*sociation of Houston,* 586 S.W.2d 849 (Tex. 1979). Therefore, the lack of a corrupt agreement or scheme is not an element of the Goldrings' cause of action and a lack of proof thereof cannot be a basis for summary judgment.

The Bank asserts in "b" that the payment of attorneys' fees was not payment for the use, forbearance, or detention of money. Necessarily included in this assertion is the issue of whether or not the Goldrings actually owed the Bank the $17,593.36 demanded as attorneys' fees. If they did owe that amount and if the demand was not for the ten percent (10%) attorneys' fees due under the note for collection purposes, then the demand and subsequent payment of attorneys' fees could not constitute payment for the use, forbearance or detention of money.

This record, however, leaves these fact issues unresolved. Therefore, whether or not the payment of attorneys' fees constituted payment for the use, forbearance, or detention of money is also unresolved. As an unresolved issue expressly presented to the trial court it cannot support a summary judgment. The judgment of the trial court is reversed and the cause is remanded for trial on the issues presented by the pleadings.