TEXAS COMMERCE
BANK–ARLINGTON,
Petitioner,

v.

P.A. GOLDRING, et ux., Respondents.

No. C–2248.

Supreme Court of Texas.

Feb. 8, 1984.

Rehearing Denied March 21, 1984.

Bagby, Ross, DeVore & Arnn, William L. Bagby and Deborah K. Hartley, Arlington, for petitioner.

Brown, Herman, Scott, Dean & Miles, William, Brown and Dennis M. Conrad, Fort Worth, for respondents.

WALLACE, Justice.

This is an appeal from a summary judgment in favor of the lender in an allegedly usurious transaction. The trial court granted summary judgment for the lender which was reversed by the court of appeals. 651 S.W.2d 361. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

P.A. Goldring and wife, Joyce (Goldring) had been customers of Texas Commerce Bank-Arlington (the Bank) since 1939. Three times between 1965 and 1970 they borrowed money from the Bank and signed promissory notes secured by liens on a parcel of real estate. None of the principal or interest was paid on the notes. In 1970 the three notes were renewed and extended into one note which covered the principal and interest due. The 1970 note was due one year from date of execution but was not paid at maturity. During this time Goldring's children had filed suit claiming title to the property in question. The Bank intervened in the suit which terminated in judgment quieting title in Goldring.

After maturity of the 1970 note, the Bank posted the real property for foreclosure. At the request of Goldring the Bank pulled-down the foreclosure and on June 30, 1972, Goldring signed yet another note, in the amount of $89,539.38, which included all past due principal, interest, ad valorem taxes paid by the Bank on the property and $17,593.36 for attorney's fees incurred by the Bank. The attorney's fees were for the lawsuit concerning title to the property plus collection efforts by the Bank against Goldring. The parties agree that the Bank was not obligated to intervene in the title dispute on behalf of Goldring and that the intervention was to protect the Bank's interest in its collateral.

The 1972 note is the instrument alleged by Goldring to be usurious. The 1970 note contained a provision for attorney's fees equaling 10% of the past due principal and interest if placed in the hands of an attorney for collection. It is undisputed that the Bank paid the attorneys $17,593.36, and it is further undisputed that 10% of the unpaid principal and interest at the time of execution of the note was $13,233.05.

Based on these facts both parties filed motions for summary judgment. Goldring contends that the attorney's fees were interest as a matter of law, that the transaction was usurious as a matter of law and that they are entitled to statutory penalties of $97,972.16 which is double the interest actually paid. The Bank contends that the attorney's fees were not interest and that the transaction, as a matter of law, was not usurious.

Interest is defined by the Legislature as the compensation allowed for the use or foreclosure or detention of money. TEX. REV.CIV.STAT.ANN. art. 5069–1.01 (Vernon 1971). This court has on a number of occasions applied that definition to particular fact situations to determine if a usurious transaction had occurred. We have held that usury statutes are penal in nature and should be strictly construed. *Houston Sash & Door, Co. v. Heaner*, 577 S.W.2d 217 (Tex.1979).

In *Stedman v. Georgetown Savings & Loan Association*, 595 S.W.2d 486 (Tex. 1979), we held that a commitment fee equal to 10% per annum of the loan was not interest even though the lender referred to it as interest. We held that a fee which entitled the borrower to a distinctly separate and additional consideration apart from the lending of money is not interest and cannot be the basis of usury. In *Greever v. Persky*, 140 Tex. 64, 165 S.W.2d 709, 712 (1942), we stated: "A lender may, without violating the usury law, make an extra charge for any distinctly separate and additional consideration other than the simple lending of the money . . . ." In *Ross v. Walker*, 554 S.W.2d 189 (Tex.1977), the lender borrowed $50,000 from a bank and

endorsed the proceeds check to the borrower. The borrower agreed to pay the interest on the $50,000 note to the bank and in addition executed a note to the lender for $55,000. The lender alleged that the additional $5,000 was for services in securing the loan and for a prior real estate commission due him from the borrower. We applied the above rule from *Greever v. Persky*, supra, even though the additional consideration was an event which had previously occurred.

In the case before us it is undisputed that the Bank hired attorneys to intervene in the lawsuit against Goldring, that the purpose of hiring the attorneys was to quiet title to the property in Goldring, and that the Bank paid the attorneys $17,593.36 for that service plus other legal services actually rendered in connection with the Goldring loans. We hold that the attorneys' service was consideration in addition to the simple lending of money, and thus was not interest.

Where there is any dispute in the evidence as to whether a charge in addition to interest is actually for an additional consideration, a fact question is raised. *Greever v. Persky*, supra. In this case there is no dispute in the evidence as to the character of the $17,593.36. Both of the parties agree that it was for payment to the attorneys for services rendered. Therefore it is not necessary to remand the case to the trial court. As stated above, both parties moved for summary judgment based on undisputed facts. Contrary to the court of appeals' holding, there are no fact issues to be resolved.

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

SPEARS, J., concurs with opinion in which KILGARLIN, J., joins.

ROBERTSON, J., dissents with opinion.

SPEARS, Justice, concurring.

I reluctantly concur. No longer is there any viable claim of usury against the extra

charges made by a bank. The principle now seems well established that any expenses incurred by a bank to protect its security and collect its loan may be added to the interest charged on the indebtedness without violating the usury laws.

Those business expenses of a lending institution that may be added to the debt without being called "interest" are now without limitation. This court has held a plethora of charges can be added to the interest charged on an indebtedness without being charges for the "use, forebearance or detention" of money.

A time-price differential is not interest. *Rattan v. Commercial Credit Co.*, 131 S.W.2d 399 (Tex.Civ.App.—Dallas 1939, writ ref'd). A "commission" charged when the loan is passed through an intermediary financial institution is not interest. *Crow v. Home Savings Association*, 522 S.W.2d 457 (Tex.1975). "Commitment fees" are not interest. *Gonzales County Savings & Loan Association v. Freeman*, 534 S.W.2d 903 (Tex.1976). "Prepayment penalties" are not interest. *Boyd v. Life Insurance Co. of the Southwest*, 546 S.W.2d 132 (Tex. Civ.App.—Houston [14th Dist.] 1977, writ ref'd). Fees for obtaining a loan are not interest. *Ross v. Walker*, 554 S.W.2d 189

(Tex.1977) (per curiam). We have even held that charges that the lender itself specifically terms "interest" in the instruments are not interest. *Stedman v. Georgetown Savings & Loan Association*, 595 S.W.2d 486 (Tex.1979).[1]

Each of these decisions, and this decision, extends the holding in *Greever v. Persky*, 140 Tex. 64, 165 S.W.2d 709 (1942), that so long as charges are for "distinctly separate and additional consideration other than the simple lending of money" they are not interest. The rule has now been stretched to the point that if another label can be applied to the charge, it isn't interest in the eyes of the law. This is so even though the nexus of the transaction is the making of the loan, and without a loan, there would be no occasion to make any charges at all.

The legislature has carved out additional exceptions to the usury statutes. For example, the distinction between interest and time price differentials, first created by the courts, has been legislatively adopted. *See* TEX.REV.CIV.STAT.ANN. art. 5069–6.-01(h) (Vernon 1971 & Supp.1971–1982). Credit insurance premiums are not considered interest even though the lender profits. Art. 5069–3.18(7), –6.04(10),

---

**1.** The courts of appeals have joined this trend by excluding from the definition of "interest" finance charges representing the difference between the cash price and time price, *Rotello v. International Harvester Co.*, 624 S.W.2d 249 (Tex.App.—Dallas 1981, writ ref'd n.r.e.); *Rotello v. Twin City International, Inc.*, 616 S.W.2d 318 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Mid-States Homes, Inc. v. Sullivan*, 592 S.W.2d 29 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.); *Argonaut Insurance Co. v. ABC Steel Products Co.*, 582 S.W.2d 883 (Tex. Civ.App.—Texarkana 1979, writ ref'd n.r.e.); *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); cash "discounts" or "trade discounts," *Argonaut Insurance Co. v. ABC Steel Products Co., supra;* prepayment penalties, *Bearden v. Tarrant Savings Association*, 643 S.W.2d 247 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); a percentage charge for the period between the ordering and delivery of goods, *Meyer v. Mack Sales, Inc.*, 645 S.W.2d 493 (Tex.App.—Corpus Christi 1982, no writ); a percentage increase in the purchase price during the period before a purchase option was exercised, *Delta Enterprises v. Gage*, 555 S.W.2d 555 (Tex.Civ.App.—Fort

Worth 1977, writ ref'd n.r.e.); a fee for the release of a lien held by the lender, *Wagner v. Austin Savings & Loan Association*, 525 S.W.2d 724 (Tex.Civ.App.—Beaumont 1975, no writ); payment of a prior debt of the borrower as a condition precedent to a new loan, *Dorfman v. Smith*, 517 S.W.2d 562 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ); *Laid-Rite, Inc. v. Texas Industries, Inc.*, 512 S.W.2d 384 (Tex.Civ.App. —Fort Worth 1974, no writ); *see also Stephens v. First Bank & Trust of Richardson*, 540 S.W.2d 572 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.); and, foreshadowing the decision in this case, attorney fees of the lender charged to the borrower, *Sapphire Homes, Inc. v. Gilbert*, 426 S.W.2d 278 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.).

I should note that the Federal Government has narrowed the meaning of "interest" even further. In the Depository Institutions Deregulation and Monetary Control Act of 1980, Congress removed discount points on residential real estate loans from state usury law definitions of interest. 12 U.S.C. § 1735f–7 (Supp. V 1981).

-6A.08(11). The legislature has even proclaimed non-usurious the collection of interest exceeding 100% per annum on certain small loans. Art. 5069–3.16.

It would now seem plausible for banks to add to each loan "overhead" charges that would not be interest. Such charges can no more be said to be for the "use, forebearance or detention" of money than the charge involved in this case. What we have done is to permit the banks to add the expenses of doing business on top of the interest charged on the loans they make, thus avoiding the usury laws altogether by means of mirrors.

These results are not fortuitous; the majority recognizes the ramifications of its decision and the cumulative thrust of this case and those it cites, i.e., so long as a bank can put a different label on a charge, it will not be called "interest" by the courts.

To be sure, the facts of this case generate little empathy with the position of the Goldrings, the debtors. Judicial wisdom, however, should transcend the facts of any one case in enunciating a rule for all. If this court were writing on a clean slate, the proper result would be to treat the charges in this case as interest. The services of the bank's attorneys in the prior suit were aimed at protecting the bank's security interest, not the interests of the Goldrings. The Goldrings and the bank were each represented by their own lawyers. *See Goldring v. Goldring*, 523 S.W.2d 749 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.). Accordingly, the fees incurred by the bank should be treated as any other expense incident to the simple lending of money.

Unfortunately, the slate is not clean. I concur with the result in this case because I agree that it follows from the cases cited above.

Thus ends this requiem to usury by banks. *Requiescat in pace!*

KILGARLIN, J., joins in this concurring opinion.

ROBERTSON, Justice, dissenting.

I respectfully dissent. In *Alamo Lumber Company v. Gold*, 661 S.W.2d 926 (Tex.1983), this Court held when a lender requires a borrower to pay the debt of another, as a condition to making a loan, that debt must be included in the computation to determine usury. However, in the present case, this Court has held where a bank requires a borrower pay expenses the borrower was not previously liable for, as a condition to extending a loan, those expenses need not be included in the calculation to determine usury. I fail to see the distinction.

Texas Commerce Bank required the Goldrings to reimburse the bank for an obligation incurred solely by the bank for the protection of the interest in collateral securing the Goldrings' note before agreeing to grant an extension of the Goldrings' loan. The bank, without request or legal obligation, employed counsel. The attorneys were selected and under the exclusive direction of the bank. The legal assistance was for the expressed purpose of protecting the bank's pecuniary interest. The attorneys looked solely to the Bank for payment of services.

It is this independent debt of the bank which the bank requires the Goldrings to assume as a condition precedent to the extension of the underlying loan. It is inconceivable to me how a lender's debt forced upon a borrower is not a factor which should be considered to determine usury.