

# The Attorney General of Texas

March 21, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Kenneth H. Ashworth
Commissioner
Coordinating Board
Texas College & University System
P. O. Box 12788
Austin, Texas    78711

Opinion No. JM-303

Re:    Whether federal money received by the Hinson-Hazlewood College Student Loan Program as a lender's special allowance is subject to the provisions of section 52.17 of the Education Code

Dear Mr. Ashworth:

You have asked our opinion about the application of section 52.17 of the Texas Education Code to certain funds received by the Coordinating Board from the federal government. Your letter reads in part:

> Chapter 52 of the Texas Education Code provides for the coordinating board to administer the Hinson-Hazlewood College Student Loan Program authorized by article III, section 50b and section 50b-1 of the Texas Constitution.
>
> Under this authority the board sells Texas College Student Loan Bonds, the proceeds from which are deposited in the Texas Opportunity Plan Fund in the state treasury until needed to make loans to eligible students.
>
> Money received by the board as repayment of principal and interest on loans must be deposited to the Texas College Student Loan Bonds Interest and Sinking Fund, as provided in section 52.17 of the Education Code, to pay the interest and principal coming due on bonds and to maintain a reserve for such purpose. When the amount in the Interest and Sinking Fund exceeds requirements, the excess may then be deposited in the Texas Opportunity Plan Fund for use in making additional loans to eligible students.

. . . .

> The federal program recognizes that the established rates of interest are generally too low to cause lenders to be willing to make loans to students under the program and, therefore, provides for a variable lender's special allowance designed to increase the income from such loans up to the regular market level.

. . . .

> To clarify how we may use such funds in the future, we would appreciate your opinion on whether the money received by the Hinson-Hazlewood program from the special lender's allowance should be considered as interest on loans and therefore be subject to the provisions of section 52.17. . . .

Article III, section 50b of the Texas Constitution was adopted in 1965. For the first time, it allowed the Coordinating Board of the Texas College and University System, if permitted by the legislature, to sell Texas College Student Loan Bonds, and set out in subsection (b) the manner in which the bond proceeds were to be used:

> (b) All moneys received from the sale of such bonds shall be deposited in a fund hereby created in the State Treasury to be known as the Texas Opportunity Plan Fund to be administered by the Coordinating Board, Texas College and University System, or its successor or successors to make loans to students who have been admitted to attend any institution of higher education within the State of Texas, public or private, including Junior Colleges, which are recognized or accredited under terms and conditions prescribed by the Legislature, and to pay interest and principal on such bonds and provide a sinking fund therefor under such conditions as the Legislature may prescribe.

The Fifty-ninth Legislature made the necessary provisions. Acts 1965, 59th Leg., ch. 101 at 229. The Texas College Student Loan Bonds Interest and Sinking Fund was established by a provision codified as article 2654g, V.T.C.S. (article II, section 7), which was amended in 1967 and, as amended, later incorporated into the Texas Education Code as section 52.17 thereof. It currently reads in part:

(a)   Each fiscal year a sufficient portion of the funds received by the board as repayment of student loans granted under this chapter and as interest on the loans shall be deposited in the state treasury in the Texas College Student Loan Bonds Interest and Sinking Fund, referred to in this chapter as the interest and sinking fund, to pay the interest and principal coming due during the ensuing fiscal year and to establish and maintain a reserve in the interest and sinking fund equal to the average annual principal and interest requirements of all outstanding bonds issued under this chapter.

(b)   If in any year funds are received in excess of the foregoing requirements, then the excess shall be deposited in the Texas Opportunity Plan Fund and may be used for the same purposes and upon the same terms and conditions prescribed for the proceeds derived from the sale of the Texas College Student Loan Bonds.   (Emphasis added).

In 1969, another constitutional amendment was adopted (article III, section 50b-1) which increased the amount of bonds that could be issued for student loan purposes (subsection (a)), but it provided that they should "be handled as provided in Section 50b of the Constitution and the laws enacted pursuant thereto" (subsection (b)). Thus, the provisions of section 52.17 of the Education Code, set out above, apply to bonds authorized by both constitutional amendments.

We are of the opinion that the words of the statute, "interest on the loans," embrace "special lenders' allowance" funds received from the federal government, and it is unnecessary to decide whether a contrary legislative intent would comport with the constitutional provisions. Cf. Tex. Const. art. III, §50b(d).

As explained by the Code of Federal Regulations:

The Secretary pays a [Guaranteed Student Loan Program] lender a portion of the interest on a loan on behalf of an otherwise eligible borrower. This payment is known as interest benefits.   34 CFR §682.300(a).

. . . .

The Secretary pays a special allowance to lenders on all [Guaranteed Student Loan Program]

> loans. The special allowance is equal to a percentage of the average unpaid balance of principal, including capitalized interest, for all GSLP loans a lender has held during a 3-month period. 34 CFR §682.302(a).

The program is designed to enable persons to acquire a higher education by offering them low-interest loans that they need not begin repaying until they have completed school. Lending institutions are induced to make loans to students at rates below the market rate by requiring the federal government: (a) to pay the low rate of interest on the loan the student has agreed to pay until the student actually starts paying it himself; and (b) to pay additionally a rate on the aggregate of the lender's outstanding student loans (the special allowance) until they are all repaid. The additional "special allowance" rate to be received by the lender for the use of his money is pegged at a percentage of the bond equivalent rates of the 91-day treasury bills auctioned during the 3-month period. 20 U.S.C. §1087-1(b)(2)(A). The lender receives two tiers of compensation for the loan.

An earlier method of calculating the "special allowance" has changed but its character has not. As Senate Report No. 882 disclosed in discussing the allowance as previously calculated:

> Special allowances are paid to lenders to encourage participation in the program. The rate provides for up to 3% interest payments to lenders in addition to the 7% basic rate for a total interest compensation of up to 10%.

Senate Report No. 882, 94th Cong., 2d Sess. 18, reprinted in 1976 U.S. Code Cong. & Admin. News 4713, 4730.

In Attorney General Opinion JM-178 (1984), the character of federal payments made in connection with such student loans was discussed. It was there said:

> The student higher education loans in question usually are made by private lending institutions at interest rates lower than the generally available rates. We understand that until the loan is in pay-back status, the holder of the loan receives from the federal government an interest subsidy payment for the facial amount of the interest plus a variable lenders special allowance that brings the interest income up to the regular market level of interest. . . . We believe that the interest income to a lending institution that

> it receives as the holder of a guaranteed student loan constitutes an economic benefit within the meaning of article 988b.

The additional "special allowance" continues to be paid by the federal government (in the case of default) so long as the borrower has not repaid the loan, the lender has not received payment on a claim of loss for the loan, or a claim for loss on the loan has not been finally refused. 20 U.S.C. §1087-1; 34 CFR §682.302(d)(3).

In Texas, by whatever name it is called, "interest" is the compensation allowed by law for the use or detention of money. V.T.C.S. art. 5069-1.01(a). "It is not the labeling of payments that determines whether they constitute interest, but rather, it is the substance of the transaction which controls." Delta Enterprises v. Gage, 555 S.W.2d 555, 558 (Tex. Civ. App. - Fort Worth 1977, writ ref'd n.r.e.). As the Texas Supreme Court held in Gonzales County Savings & Loan Association v. Freeman, 534 S.W.2d 903, 906 (Tex. 1976):

> Labels put on particular charges are not controlling. A charge which is in fact compensation for the use, forbearance or detention of money is, by definition, interest regardless of the label placed on it by the lender. Art. 5069-1.01(a).

We think there can be no doubt that the special allowances paid lenders by the federal government in connection with the Guaranteed Student Loan Program constitute payments for the use, forbearance, or detention of money and, therefore, are funds received by the board as interest on loans within the meaning of section 52.17 of the Texas Education Code. They are subject, in our opinion, to its provisions.

## S U M M A R Y

> Special allowances paid lenders by the federal government pursuant to the Hinson-Hazlewood program and the federal Guaranteed Student Loan Program constitute interest on loans within the meaning of section 52.17 of the Texas Education Code.

Very truly yours,

*[signature: Jim Mattox]*

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Colin Carl
Susan Garrison
Tony Guillory
Jennifer Riggs
Bruce Youngblood